## HILTON & DODGE LUMBER COMPANY *v.* INGRAM.

1. "In a civil cause, it is good cause of challenge that a juror has expressed an opinion as to which party ought to prevail, or that he has a wish or desire as to which should succeed." Penal Code (1910), § 859. A party may avail himself of this cause of challenge by motion to put the jurors on their voir dire. In such case the court may propound the questions indicated in the code section to each juror, or he may propound them to the entire panel, adopting such plan as will assure a response to each question from each individual juror. This is accomplished when the judge, after propounding the questions, directs that any juror answering both or either questions in the affirmative shall stand up. A preliminary oath should be administered to the jurors before propounding the questions; but if this is inadvertently omitted and the attention of the court is not called thereto, it is too late after verdict to make this objection for the first time.

2. The charge on the master's liability to a servant for failing to furnish a safe place to work, to which exception was taken, when considered in connection with its context, was not erroneous.

3. It is oftentimes impossible to state a complete proposition of law in one sentence. Therefore the whole instruction on that subject must be considered. The various excerpts of the charge relating to a master's duty to a servant in the employment of other servants, when considered together and with the entire charge, were not open to the criticisms on the disjointed segments.

4. The Civil Code (1910), § 4426, declares: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. But in other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." It was not error to give in charge the principle therein contained, on request, although the plaintiff in his pleadings sought to recover full damages for the injuries alleged to have been sustained.

5. Under the facts of the case this court can not say that the verdict, which has the approval of the trial judge, is so excessive as to justify an inference of gross mistake or undue bias on the part of the jurors.

FEBRUARY 16, 1911.

Action for damages. Before Judge Parker. Glynn superior court. October 23, 1909.

*W. G. Brantley* and *W. E. Kay,* for plaintiff in error.

*Toomer & Reynolds* and *D. W. Krauss,* contra.

EVANS, P. J. This case comes to us for the fourth time. 108 *Ga.* 194 (33 S. E. 961); 119 *Ga.* 652 (46 S. E. 895, 100 A. S. R. 204); 125 *Ga.* 658 (54 S. E. 648). The parties have waged legal combat for several years with varying success. We have carefully considered the voluminous record, and have reached the conclusion that the final chapter should be written. The suit is by a servant

against his master to recover damages for an injury sustained while engaged in the master's business. The master operated a sawmill. One department of the business was the trucking of lumber from the mill to the lumber-yard over an elevated platform or brow, under which the plaintiff worked as a lumber inspector. He was injured by a piece of lumber falling through an aperture or hole from the elevated platform or brow and striking him while he was at work underneath the platform. One of his legs was broken. The declaration alleged negligence on the part of the master in two respects: (1) in having an incompetent, ignorant, unskilled, and inexperienced person performing the difficult and responsible work of trucking lumber and timber upon the elevated platform or brow; (2) in failing to provide a safe place for the servant in performing his work, the unsafe place being caused by the master's "maintaining" and allowing a hole to be and remain in such brow or platform. The last verdict was for the plaintiff, and we are called upon to consider the correctness of the judgment refusing the defendant a new trial.

1.    On the call of the case and the announcement of both parties that they were ready for the trial, counsel for the defendant moved that the entire panel of twenty-four jurors be put upon the voir dire and questioned as to their competency and impartiality. Whereupon the court, without directing that any juror be sworn and without swearing any of them, propounded to the entire panel of twenty-four jurors at one time these questions, suggested by the defendant's counsel: "Have you formed or expressed an opinion as to which party ought to prevail in this cause?" "Have you any wish or desire as to which party ought to succeed in this cause?" and directed that any juror answering both or either questions in the affirmative should stand up. One or two jurors stood up, and thereupon the court pronounced the remainder of the panel competent and impartial. The error assigned is the failure of the court, upon motion of defendant's counsel to put the jurors upon the voir dire, to order the jurors sworn and questioned separately. If we construe the assignment of error as complaining that each juror was not separately examined touching his competency and impartiality, the assignment is not meritorious. This court has commended the practice of administering to a panel of jurors at once the oath preliminary to their examination on their voir dire as to their competency. *Roberts* v.

*State,* 65 *Ga.* 431. In felony cases the statute requires that on calling each juror he shall be presented to the accused in such a manner that he can distinctly see him, and then the State or the accused may make certain objections, and then certain questions are to be propounded; and if the juror is found competent, he shall be put on the prisoner, and, unless peremptorily challenged, he shall be sworn to try the cause. Penal Code (1910), §§ 999, 1001, 1003. And because of this prescribed way of making up the jury which is to try him, it was held that in the trial of a felony there is no authority of law for examining on the voir dire more than one juror at a time. *Williams* v. *State,* 60 *Ga.* 367 (27 Am. R. 412). But in civil cases the jury is selected from a panel of twenty-four, which number is reduced to twelve by either party striking six jurors. Each party may demand a full panel of twenty-four competent and impartial jurors from which to strike a jury, and it is good cause of challenge "that a juror has expressed an opinion as to which party ought to prevail, or that he has a wish or desire as to which party should succeed." Penal Code (1910), §§ 857, 858, 859. We can not see any impropriety in the court's propounding the questions to the jury as a panel, where it is evident that the form of examination insures certainty as to an expression of competency or incompetency from the individual juror. The whole purpose of the examination is to elicit an expression from each juror as to his competency; and if this can be done by examining the panel, we can see no harm in the practice. Much time will be saved and no hurt caused to the parties. So far as my observation or experience extends, the method of testing the competency of the panel in a civil case has been that pursued by the trial court in this case. If we construe the assignment of error to raise the point that no preliminary oath was administered, it is too late to raise the point after verdict. *Candler* v. *Hammond,* 23 *Ga.* 493; *Smith* v. *State,* 81 *Ga.* 479 (2) (8 S. E. 187).

2. In charging on the law relating to the defendant's obligation to furnish a safe place to work the court said: "It is further contended on the part of the plaintiff that the Hilton & Dodge Lumber Company, the defendant, was negligent in permitting its elevated brow or platform to become broken and out of repair, which made the place of work of the plaintiff dangerous and unsafe to him in performing the work of the master, and that this

was negligence, and that such negligence contributed proximately to the plaintiff's injury. Upon this contention I charge you, gentlemen of the jury, that if you believe the defendant negligently allowed the brow or platform described to be out of repair to the extent and in the manner claimed by the plaintiff, and that this was negligence upon its part, contributing substantially to the plaintiff's alleged injury, then the plaintiff would be entitled to recover. In this connection, I charge you, however, that in order for the plaintiff to recover for injuries arising from the failure of the master to comply with the duty imposed by the rule just above stated, it must appear that the defendant knew or ought to have known of the alleged defective condition of said brow, and it must also appear that the plaintiff did not know and have equal means of knowing and by the exercise of ordinary care could not have known thereof." This excerpt is alleged to be erroneous, because it confused a defective condition of the brow with an unsafe place to work; it eliminated all question of knowledge on the part of either plaintiff or defendant as to whether plaintiff's place of work was safe or unsafe; it eliminated the theory of accident, and authorized a recovery if the defective condition of the brow substantially contributed to plaintiff's injury, even though such defective condition of the brow did not make plaintiff's place of work unsafe. This fragment from the charge must be considered in its relation to its context, containing the instruction of the court defining the liability of a master for failure to furnish a servant a safe place to perform the work of his master. With this subject the court elaborately dealt, and the only criticism is upon the quoted extract. Indeed, the criticism that certain defensive matters were excluded is answered by other assignments that the verdict was contrary to given portions of the charge submitting these matters of defense, and contrary to other excerpts denying the plaintiff's right of recovery unless he brought himself within the principles of law, correctly defined, which give a right of action to a servant for the master's failure to furnish him a safe place to perform his work.

3. Complaint is made of four extracts from the court's charge on the subject of the master's liability for the negligence of an incompetent servant, viz.: (a) "The court charges you, that if you believe from the evidence in this case that the Hilton & Dodge

Lumber Company failed to exercise ordinary care in the selection of its said servant, Prince Anderson, for the duty and work assigned him, or retained him at this service after knowledge of his incompetency, and that thus having intrusted to him the discharge of the duty of trucking the lumber described upon and over the brow described in the plaintiff's petition, and that the defendant in these respects was negligent, and that such negligence contributed substantially to the injuries of the plaintiff, and that the plaintiff was himself in the exercise of ordinary care to avoid injury, then the plaintiff, Ingram, would be entitled to recover in this case. In this connection, however, the court charges you that for injuries arising from the negligence of the master in failing to comply with the duty just hereinbefore stated, in order for the plaintiff to recover it must appear that the defendant knew or ought to have known of the alleged incompetency of Prince Anderson, its servant, and it must also appear that the plaintiff, who was injured, did not know and had not equal means of knowing and by the exercise of ordinary care could not have known of this fact." (*b*) "That it is the duty of the master, and the performance of which he can not delegate to another, so as to relieve himself from liability, to employ and provide reasonably skilled and experienced servants to work with their fellow servants." (*c*) "The court charges you further, gentlemen of the jury, that if you find from the evidence that the superintendent, Lyles, agent of the defendant, put the witness, Prince Anderson, on the brow or elevated platform, then such officer or agent of the company would be the alter ego, or vice-principal, of the defendant, and any negligence of the superintendent in this respect, if any be shown, would be attributable to the company. If you should find, however, that the superintendent, Mr. Lyles, did not place Prince Anderson there, but find that one of his fellow servants, Mr. Dudley, or some one else who was a fellow servant of the plaintiff, put Prince Anderson up there to work, then the plaintiff could not recover in this case, because the company would not be liable under these circumstances; that rule would apply provided you find from the evidence that Mr. Lyles was the superintendent of the defendant company at this mill, and that he was vested with the authority of controlling the servants about the mill and of employing and discharging them." (*d*) "The servant has a right to rely upon the master's inquiry, because

it is the master's duty to inquire, and the servant may justly assume that the master has done all that the law requires with reference to his duties to his servants." The exceptions to charge (a) are that it contains no instruction that the jury must find that the servant, Prince Anderson, who was trucking the lumber, was incompetent, but assumed his incompetency; and that the charge was misleading and did not require the jury to find, in order to authorize a recovery, that the happening of the injury was due to the incompetency of Prince Anderson. In this part of his charge the court was referring only to the negligence of the master in employing an incompetent servant; he had just instructed the jury that "to hold the defendant liable for placing the said Prince Anderson to truck lumber on said elevated brow or platform, you must not only find that the said Prince Anderson was incompetent, but that said incompetency contributed substantially to the plaintiff's injuries," etc. Construed in its context the charge was not erroneous. In the exception to charge (b) the abstract soundness of the charge is not questioned; it was neither misleading nor inapplicable. The criticism on charge (c) is its alleged incompleteness; that it authorized a recovery if the jury believed the testimony of Prince Anderson to the effect that the defendant's superintendant, since deceased, when he put him in charge of the work, was told that he was incompetent, regardless of the superintendent's knowledge of Anderson's competency. This charge is not erroneous for any of these reasons. No complaint is made that charge (d) is not good abstract law, but the criticism is that it was not applicable to the facts, and, in connection with the instruction immediately following, served to mislead the jury and resulted in the elimination of the lumber company's defense. That instruction was that "the risks of employment which an employee assumes do not embrace the risk of another employee's incompetency, which incompetency he is not bound to anticipate, and of which he does not know." The charge was adjusted to the facts of the case. One ground of negligence alleged in the petition was the master's failure of duty in the selection of a competent servant to truck the lumber on the elevated platform, and there was evidence tending to sustain the allegation on this point.

4. It is contended that the court erred in charging the principle contained in the Civil Code (1910), § 4426, that if the plaintiff by

ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover, but that in other cases the defendant is not relieved, although the plaintiff may have in some way contributed to the injury sustained. In *Hill* v. *Callahan*, 82 *Ga.* 109 (8 S. E. 730), which was a case between servant and master to recover damages for injuries sustained by the servant, the court said it was the better practice for the court to instruct the jury upon contributory negligence as tending to lessen the damages, though a verdict would not be set aside for failure to give this principle in charge, when the plaintiff sought to recover the full damage, and made no request to the court to give the principle in charge to the jury. In this case the charge was given on request of the plaintiff; and as the charge given was abstractly correct, it was not error to give it. *Southern Cotton Oil Co.* v. *Skipper*, 125 *Ga.* 369 (54 S. E. 110).

5. The verdict was for $10,000, and is alleged to have been excessive. The injury occurred about fifteen years before the last trial. The evidence shows that the plaintiff's leg was broken; he suffered and still suffers much pain from the injury, and is a cripple for life. We can not say that the amount is excessive. *So. Ry. Co.* v. *Brock,* 132 *Ga.* 862 (64 S. E. 1083). The evidence is voluminous, and no exception is taken to the admission and rejection of any testimony. The complaint that the court failed to charge certain principles is without merit, inasmuch as such as were applicable are covered by the charge of the court, which was comprehensive, full and fair, and free from substantial error. The verdict is supported by the evidence, and no reason for another trial is made to appear.          *Judgment affirmed. All the Justices concur.*