## BRYAN *v.* MONCRIEF FURNACE COMPANY *et al.*

826

No. 6613.  July 23, 1929.

*Ben J. Conyers* and *J. K. Jordan,* for plaintiff.

*Harold Hirsch, Paul S. Etheridge,* and *Candler & Candler,* for defendants.

HINES, J.  Bryan brought suit against Moncrief Furnace Company and Knights of the Ku Klux Klan, both being corporations, for the recovery of damages for a personal injury.  Knights of the Ku Klux Klan is a corporation without capital stock, and is a secret organization.  Upon the call of said cause for trial in the superior court, counsel for the plaintiff requested the court to purge the jury of all members of the Knights of the Ku Klux Klan, which motion the court overruled, and forced counsel for the plaintiff to strike the jury without purging therefrom members of such Klan. The case proceeded to trial before a jury, and a verdict adverse to the plaintiff was rendered.  He moved for a new trial upon the grounds, among others, that H. M. Butler, Homer S. Reese, and Paul T. Reddick, three of the jurors who rendered said verdict were members of the Knights of the Ku Klux Klan when said case was tried, and because the court erred in failing to purge the jury of members of said Klan, when requested by his counsel, this request being resisted by counsel for this defendant.  The showing in support of the ground of the motion for new trial that three of the jurors who tried the case were members of the Klan need not be set out.  The trial judge overruled the motion for new trial, to which ruling the plaintiff excepted and took the case to the Court of Appeals.  That court affirmed the judgment of the trial court, for the reasons assigned in its opinion.  *Bryan* v.

*Moncrief Furnace Co.,* 38 *Ga. App.* 107 (142 S. E. 700). The plaintiff applied for a certiorari, which was granted, and the case is in this court to review the judgment of the Court of Appeals.

■ Did the Court of Appeals err in not deciding whether or not the trial court erred in denying the timely motion of the plaintiff to purge the jury of all members of the Knights of the Ku Klux Klan? "In civil cases and cases of misdemeanors in the superior court, each party may demand a full panel of twenty-four competent and impartial jurors from which to strike a jury; and when one or more of the regular panel of traverse jurors is absent, or for any reason disqualified, the presiding judge, at the request of counsel for either party, shall cause the panel to be filled by tales jurors to the number of twenty-four, before requiring the parties, or their counsel, to strike a jury." Penal Code, § 858. Under that section and the decisions of this court, parties are entitled to an impartial jury. They have the right to a panel of twenty-four impartial jurors from which to strike. *Mayor &c. of Columbus* v. *Goetchius,* 7 *Ga.* 139; *Justices* v. *Griffin &c. Plank Road Co.,* 15 *Ga.* 39; *Howell* v. *Howell,* 59 *Ga.* 145. An impartial jury is the foundation stone of the fairness of trial by jury. *Melson* v. *Dixon,* 63 *Ga.* 682, 686 (36 Am. R. 128). Were the members of the Knights of the Ku Klux Klan, a corporation without capital stock, competent and impartial jurors to try this case? They were not. "Jurors may be challenged, *propter affectum,* for suspicion of bias or partiality. This may be either a principal challenge, or to the favor. A principal challenge is such, where the cause assigned carries with it *prima facie* evident marks of suspicion, either of malice or favor, as that a juror is of kin to either party within the ninth degree; that he has been arbitrator on either side; that he has an interest in the cause; that there is an action depending between him and the party; that he has taken money for his verdict; that he has formerly been a juror in the same cause; that he is the party's master, servant, counsellor, steward, or attorney, or of the *same society* or *corporation* with him—all these are principal causes of challenge, which, if true, can not be overruled, for jurors must be *omni exceptione majores.*" *Mayor &c. of Columbus* v. *Goetchius,* supra. It necessarily follows that if the persons mentioned are subject to be challenged *propter affectum* for suspicion of bias or partiality, then clearly members of the defendant cor-

poration were not competent and impartial jurors to try this case. To permit the members of the defendant corporation to try the case of their corporation would be in effect to permit the defendant to try its own case as a juror. To permit a juror to serve in his own case violates the fundamental principle that jury trials must be fair and free from suspicion of bias or prejudice, and is contrary to the principle announced in section 858 of the Penal Code and the rulings of this court. "Trial by jury necessarily means trial by an impartial jury." *Sullivan* v. *Padrosa*, 122 *Ga.* 338, 339 (50 S. E. 142). So the plaintiff had the undoubted right to challenge the competency of the members of this order to serve as jurors in this case, if the proper method of challenge was pursued.

This brings us to consider the question whether the method pursued by counsel for the plaintiff was the proper one to challenge the competency of the members of this order to serve as jurors in this case. A party may avail himself of challenge to jurors on account of their interest in the case, by a motion to put the jurors on their voir dire. In such case the court may propound to each juror the questions indicated in section 859 of the Penal Code, or he may propound them to the entire panel, adopting such plan as will assure a response to each question from each juror. *Hilton & Dodge Lumber Co.* v. *Ingram*, 135 *Ga.* 696 (70 S. E. 234). "In misdemeanor and civil cases there is no statutory provision regulating the method to be adopted by the court in determining the competency of the juror; but the settled rule is that either party has a right to request that the jurors be put upon their voir dire, in order that their competency may be determined. When such request is made, it is the duty of the court to propound, or cause to be propounded, such questions as will test the competency of the jurors to pass upon the issues in the case. The questions to be asked in each case are to be determined by the court, and what shall be the character and number of the questions is left largely to the discretion of the judge, who must keep in mind all the time the object to be attained, that is, the determination of whether the minds of the jurors are in such condition that they can pass fairly and intelligently upon the issues to be submitted to them. . . While counsel may suggest questions to be asked, they have no right to insist that questions as framed by them shall be adopted by the court." *Sullivan* v. *Padrosa*, supra.

Counsel for the plaintiff in this case, before the striking of the jury began, requested the court to purge the jury of all members of the defendant corporation. This was "substantially a motion to challenge each and all of said jurors, and to prove their incompetency by themselves, and should have been granted by the presiding judge under the unanimous ruling of this court in the case cited from 15th *Ga.*" *Howell* v. *Howell,* supra. It has been the custom and practice in this State for counsel for parties, before beginning to strike names appearing upon the panels of twenty-four jurors furnished to them for the purpose of selecting jurors, to request the court to purge the list of jurors disqualified from interest or relationship to serve as jurors, and to have the places of disqualified jurors supplied by competent and impartial jurors before commencing to strike juries in civil cases. The writer, during a general practice in the courts of this State, extending over a period of nearly half a century, had always seen this method pursued for the purpose of eliminating incompetent and partial jurors, and has never seen or heard questioned this method of challenge, or heard of a denial of a request to purge the jury list of jurors disqualified by relationship or interest. This has been the usual and customary method of challenge to determine whether names appearing upon the list are incompetent jurors, and to have the list filled up with competent jurors, if any on the list disqualify, so that parties may have a list of twenty-four competent and impartial jurors from which to strike a jury. This method of purging the jury was approved by the Court of Appeals in *Bibb Manufacturing Co.* v. *Williams, 36 Ga. App.* 605 (137 S. E. 636). The able judge who wrote the opinion in that case well said: "In this case the trial court was not able to say, as a matter of law, that no juror of the panel was disqualified for the reason indicated; and such being the case, it was the duty of the trial judge to purge the panel. Whatever discretion might have been his in the method employed for such purpose, under the facts disclosed by the record it was no abuse of discretion for him to resort to the usual and most effective means of ascertaining the fact of disqualification."

It is entirely proper, and it is the duty of the court, to purge the jury, and endeavor to secure in the trial of cases, as far as possible, an absolutely unbiased panel. *Calhoun County* v. *Watson,* 152

Ala. 554 (44 So. 702); Woodmen of the World v. Wright, 7 Ala. App. 255 (60 So. 1006); Putnam v. Pacific Monthly Co., 68 Or. 36 (130 Pac. 987, 136 Pac. 835, 45 L. R. A. (N. S.) 338, L. R. A. 1915F, 782, Ann. Cas. 1915C, 256); Wilson v. St. Joe Boom Co., 34 Idaho, 253 (200 Pac. 884); Comfort v. Mosser, 121 Pa. 455 (15 Atl. 613); Clay v. Western Maryland R. Co., 221 Pa. 439 (70 Atl. 807). In this case the trial judge erred in refusing the request of counsel for the plaintiff to purge the jury of members of the defendant corporation, and in compelling counsel to strike the jury from an unpurged list; and we are of the opinion that the Court of Appeals erred in not passing upon the assignment of error in the plaintiff's bill of exceptions complaining of the refusal of the trial judge to purge the list of all members of the defendant corporation. Was this refusal of the court to so purge the jury, without more, reversible error? The Court of Appeals held, that, if this were error, it was not shown to have been prejudicial to the plaintiff's cause, since the record failed to disclose affirmatively that any one of the jurors who passed upon the case was, at the time of his service upon the jury, a member of the Ku Klux Klan. Is this ruling sound? This court has held that "A big part of the battle is the selection of the jury." *Melson* v. *Dixon,* supra. We have seen that the plaintiff had a right to a panel of twenty-four competent and impartial jurors from which to strike the jury in this case, and that his counsel pursued the proper method for determining whether the names appearing upon the list of twenty-four jurors were competent and impartial. This right is of vital importance to a party. Is the denial of this right cause for the grant of a new trial, or must the plaintiff go further and show affirmatively that some member or members of the jury were members of the defendant corporation? In *Howell* v. *Howell,* supra, the judgment was reversed solely upon the ground that the plaintiffs were denied their legal right to ascertain whether the jurors were impartial. They were not required in that case to go further and show affirmatively that some or all of the jurors were disqualified. In *Winter* v. *Muscogee Railroad Co.,* 11 *Ga.* 438, it was held that the failure to fill up the list of grand jurors, from which the traverse jury was drawn, to eighteen, was error, and a new trial was granted for that reason, among others, though it did not appear that the twelve who tried the case were otherwise than per-

fectly impartial jurors. In *Mayor &c. of Cartersville* v. *Lyon,* 69 *Ga.* 577, an action for damages was brought against the City of Cartersville. Residents of that city were stricken from the jury, over objection. A new trial was granted, the verdict against the city not being unquestionably demanded under the evidence. The ruling in that case was based upon the denial of the right of the city to select a jury from the panel of twenty-four jurors which was composed of residents and non-residents of the city. The new trial was granted solely upon the denial of this legal right, and the city was not required to show that the jurors or some of them that tried the case were incompetent or disqualified. In the case at bar the plaintiff had the right to select the jury from a panel of twenty-four, which did not contain members of the Klan, and had the right to have the list purged from all such members. The plaintiff was entitled to show, if he could, that there were members of the Klan on the list, by the jurors themselves. This important right and method of securing a panel of twenty-four competent and impartial jurors was denied by the court. The denial of such vital and important right entitles the plaintiff to a new trial, without going further and showing affirmatively that some of the members of the jury were members of this order. The denial of a vital remedial right alone is cause for the grant of a new trial. This is especially true in view of the fact that the Knights of the Ku Klux Klan is a secret corporate society, and its membership kept secret from the public and from litigants in the court. In these circumstances it would be difficult, if not impossible, in cases in which this corporation was a party, for the opposite party to establish that the panel embraced members of this secret organization. This could probably be done only by questioning the members of the panel under oath. So we are of the opinion that the denial of this plain right of the plaintiff to have the jury-list purged of members of this organization entitles the plaintiff to a new trial, and that the burden did not rest upon him to show that some of the members of the jury actually trying the case were members of this order. This case differs from *Etheridge* v. *State,* 163 *Ga.* 186 (136 S. E. 72), *Faulkner* v. *State,* 166 *Ga.* 645, 667 (144 S. E. 193), and *Ford* v. *State,* 12 *Ga. App.* 228 (76 S. E. 1079). In those cases challenges to jurors were improperly overruled, but they were stricken by the challenging party. In these

circumstances it was held that generally, where it does not affirmatively appear from the record that party had exhausted his peremptory challenges at the time the panel of twelve jurors was accepted and sworn, the appellate court will presume that he was not prejudiced by the action of the court in erroneously disallowing his challenge for cause, and will not grant a reversal for the alleged error. Even in these cases a new trial will be granted if a party had exhausted his peremptory challenges at the time the jury was finally accepted. In those cases the parties had got rid of the objectionable jurors, and therefore no harm was done in erroneously putting upon them a disqualified juror, unless it was shown that in striking such disqualified juror and others they had exhausted their peremptory challenges before the jury was selected. In the case at bar the challenge was to the poll, and embraced each and all of the jurors appearing upon the list, and the denial of the right to have the list purged was such error as demands the grant of a new trial.

■ In this case the plaintiff undertook to show that three of the jurors, who served on the jury in this case, were members of the Knights of the Ku Klux Klan. The Court of Appeals held that this showing was insufficient. In view of the rulings set out in the foregoing division of this opinion, it is unnecessary to pass upon this holding of the Court of Appeals.

■ Applying the principles announced above, we feel constrained to reverse the judgment of the Court of Appeals.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Hill, J., who dissent.*

HILL, J., dissenting. Sterling Bryan brought an action against Moncrief Furnace Company and Knights of Ku Klux Klan, to recover damages for personal injuries alleged to have been sustained in the loss of his right leg while correcting a defect in a magnetic switch furnished by Moncrief Furnace Company as a part of ventilating machinery the said company was installing in the regalia factory of Knights of Ku Klux Klan. At the time of this injury the plaintiff was not employed by either of the defendants, but by an electrical contractor who had been employed by the Moncrief Furnace Company to connect the motor of the ventilating machinery with outside power lines. The verdict was for the defendants. The plaintiff made a motion for new trial, which was

overruled, and he excepted. The case was taken to the Court of Appeals, which affirmed the judgment of the lower court. In the judgment of affirmance the Court of Appeals stated and ruled as follows: "Conceding (but not deciding) that the court erred in denying the timely motion of the plaintiff to purge the jury of all members of the Knights of the Ku Klux Klan, that error is not shown to have been prejudicial to the plaintiff's cause, since the record fails to affirmatively disclose that any one of the jurors who passed upon the case was at the time of his service upon the jury a member of the Ku Klux Klan. The affidavits submitted by the movant to establish his contention that three members of the jury were, at the time of their jury service, members of the Klan were insufficient to affirmatively show that fact. Furthermore, one of the affidavits was made by a person who had been one of the jurors in the case. Such an affidavit, under repeated rulings of this court and the Supreme Court, can not be considered. 'As a matter of public policy, a juror can not be heard to impeach his verdict, either by way of disclosing the incompetency or misconduct of his fellow-jurors, or by showing his own misconduct or disqualification from any cause.' . . Furthermore, the supporting affidavits required by section 6086 of the Civil Code were fatally defective, in that they failed to give the names of the associates of the witnesses upon whose newly discovered evidence a new trial was sought." The plaintiff in his petition for certiorari alleges the following errors in the foregoing judgment: "1. In failing to decide whether or not plaintiff was entitled to have the jury purged of members of Knights of Ku Klux Klan. (2) In refusing to hold that the court should have purged the jury of members of Knights of Ku Klux Klan, regardless of whether or not it could afterwards be shown that any of such jurors were members thereof. (3) Under the uncontradicted affidavit of T. E. Polhill it affirmatively appeared that two of said jurors were actually members of the Knights of Ku Klux Klan in the year 1926, in which year said case was tried, and in the absence of any counter-showing the law demanded a ruling that such jurors were incompetent to try said cause. (4) In refusing to hold that plaintiff did not have a fair and impartial trial, since there was reasonable cause to believe that at least three of said jurors were members of said Klan. (5) In wrongly applying the statutory requirements as to supporting affidavits in

cases of newly discovered evidence on the question as to the trial court's ruling in refusing to purge the jury; the distinction being that the newly discovered evidence is not favored as a ground for a new trial, whereas the policy of the law demands such rulings by the trial court as will insure a fair and impartial trial. (6) Because the supporting affidavits produced by movant fully complied with the statutory requirements of newly discovered evidence, even if such requirements were necessary on the question of said ruling of the trial court. (7) In holding that it must affirmatively appear that the jurors or some of them were members of the Knights of Ku Klux Klan during the trial, the true ruling being that if it reasonably appeared that such jurors were or might have been members of the Klan, the court should have purged the jury; and because if such strict rule as pronounced by the Court of Appeals were the law, then the uncontradicted affidavit of T. E. Polhill sufficiently showed the fact that two of said jurors were members of the Klan. (8) In holding that the affidavit of the juror Mc-Cord could not be considered to impeach the verdict, it not having been offered for that purpose, but to show probable harm to plaintiff in the trial court's refusal to so purge the jury."

Learned counsel for plaintiff in certiorari have filed a very able brief on the purity of jury trials, to all of which I agree. The writer hereof has written opinions along the same line, where such argument was relevant. See *Ala. Great So. R. Co.* v. *Brown,* 140 *Ga.* 792 (79 S. E. 1113, Ann. Cas. 1915A, 1159). But I am of the opinion that under the facts of this case the Court of Appeals did not err in the respects pointed out by plaintiff in certiorari. Even if the court erred in failing to decide affirmatively whether or not plaintiff was entitled to have the jury purged of members of Knights of Ku Klux Klan, it was not shown affirmatively by plaintiff in certiorari that the jury was composed in part of members of Knights of Ku Klux Klan; and before the court could be called upon to purge the jury of such members, it must have affirmatively appeared that such members were put upon the plaintiff in certiorari, and this was not done. See *Morrow* v. *State,* 168 *Ga.* 575 (148 S. E. 500), and cit. There is nothing in the record to show affirmatively that certain of the trial jurors were members of the Knights of Ku Klux Klan *at the time of their service as jurors in the case;* and this court can not *assume* that there was

evidence before the trial judge, at the hearing of the motion for new trial, showing that certain of the trial jurors were members of that order. In order to purge the jury of disqualified jurors it is necessary to show definitely that such disqualification existed at the time that the motion was made to exclude them. *Thompson v. State,* 4 *Ga. App.* 649 (5), 650 (62 S. E. 99). In that case it was held that "The evidence submitted in support of the attack must be such as to show not merely that at the time of the hearing of the motion for a new trial the asserted relationship existed, but definitely that it existed at the time of the juror's service." After a verdict has been rendered, affidavits of jurors may be taken to sustain, but not to impeach their verdict. Civil Code (1910), § 5933; *Fulton County v. Phillips,* 91 *Ga.* 65 (16 S. E. 260); *So. Ry. Co. v. Sommer,* 112 *Ga.* 512 (37 S. E. 735); *Corbin v. Mc-Crary,* 22 *Ga. App.* 472 (96 S. E. 445); *Rylee v. State,* 28 *Ga. App.* 230 (110 S. E. 749). In *Bowden v. State,* 126 *Ga.* 578 this court held: "As a matter of public policy, a juror can not be heard to impeach his verdict, either by way of disclosing the incompetency or misconduct of his fellow-jurors, or by showing his own misconduct or disqualification from any cause." See *Glover v. State,* 129 *Ga.* 717 (59 S. E. 816); *Redfearn v. Thompson,* 10 *Ga. App.* 551 (73 S. E. 949); *Turner v. State,* 20 *Ga. App.* 165 (92 S. E. 975); *Scott v. State,* 138 *Ga.* 29 (74 S. E. 687).

The record shows that the only evidence offered on the question of disqualification of jurors, other than that of the jurors themselves, was the affidavit of T. E. Polhill. That affidavit was dated October 5, 1927, nearly a year after the trial of the case. In it he says: "That in 1926 he was a member of the Knights of the Ku Klux Klan and that he has interviewed H. M. Butler, of 134 Formwalt Street, and Homer S. Reese, of 405 Howell Mill Road, of said county, by which means of code signals assured himself that they were *then* [italics mine] members of said Klan." I do not think that this affidavit is evidence of the fact that the jurors who it is claimed were disqualified were members of the Ku Klux Klan *at the time of their service as jurors.* I am therefore of the opinion that there was no evidence before the court, at the hearing of the motion for new trial, which would have authorized a finding that the jurors named were disqualified at the time of their service. It was said, in *McCarty v. Mobley,* 14 *Ga. App.* 225 (80

S. E. 523) : "It was error to grant a new trial on the ground that two of the jurors were disqualified by reason of relationship to the defendant, there being no evidence before the trial judge to authorize a finding that any juror was disqualified." I am also of the opinion that the Court of Appeals did not err in holding that the supporting affidavits required by § 6086 of Civil Code of 1910, were fatally defective, in that they failed to give the names of the associates of the witnesses upon whose newly discovered evidence a new trial was sought. The affidavit of Emile Breitenbucher stated that T. E. Polhill "associates with respectable people," but did not name his associates; and the ruling of the Court of Appeals was in accord with that made in *Ivey* v. *State,* 154 *Ga.* 63 (6) (113 S. E. 175), viz.: "An affidavit in support of the witness upon whose newly discovered evidence a new trial is sought must give the names of his associates, a statement that he keeps good company not being sufficient to meet this requirement, which is necessary to enable the prosecution to make a counter-showing; and where such affidavit does not comply with this requirement, the trial judge does not abuse his discretion by refusing to grant a new trial on this ground." And see *Henderson* v. *State,* 36 *Ga. App.* 303 (136 S. E. 333); *Kennedy* v. *State,* 36 *Ga. App.* 602 (137 S. E. 573); *Morris* v. *State,* 36 *Ga. App.* 282 (136 S. E. 332). So I am of the opinion that the judgment of the Court of Appeals should be affirmed, and not reversed. I am authorized by Mr. Presiding Justice Beck to say that he concurs in the foregoing dissent.