25098. FELKER *v.* JOHNSON.

DECIDED APRIL 27, 1936. REHEARING DENIED. JUNE 5, 1936.

*Joseph H. Felker*, for plaintiff in error.
*Roberts & Roberts*, contra.

GUERRY, J. On October 18, 1909, Steve R. Johnson filed suit in the city court of Monroe against Joseph H. Felker, alleging that Felker was indebted to him in the sum of $250 besides interest, for the reason that on or about November 6, 1907, the defendant entered into a contract with the plaintiff by the terms of which the plaintiff "was to sell as auctioneer certain lots of land in the town of Monroe, Walton County, Georgia, and to receive for his services as auctioneer the sum of $500 and expenses, and that this contract was evidenced by the following letters:

"Mr. Jos. H. Felker, Monroe, Georgia.      November 5, 1907.

"Dear Mr. Felker: Your postal to hand. I hasten to reply. · My terms are 5% on gross sales with a guarantee of $100 and expenses. If the commission on sales should amount to more than $100 and expenses, then the 5% would apply. These are my terms to everybody, without exception. You having insisted on a flat sale when I was over there, I told you that I would make your sale for $500 and expenses. Whether or not you employ me it is gratifying to note that you appreciate the fact that there is a difference · in auctioneers. Seventeen years experience and no failures is my guarantee of success. Awaiting your pleasure, I am

"Yours truly,                              S. R. Johnson."

"The Felker Hardware Co.      Monroe, Ga.   Nov. 6, 1907.

"Hardware, Stoves, Ranges, House Furnishings, Paints and Oil.

"Dear Mr. Johnson: Although you are the highest priced man on the list, I have decided to accept your terms for my sale, to wit: $500. I have engaged the Jefferson brass band, and expect a good crowd. I realize that most depends on the auctioneer. I suppose you'll come down about Tuesday afternoon, spending all day Wednesday before the sale next day.

"Yours very truly,                         Jos. H. Felker."

The plaintiff alleged that in compliance with said agreement he went to the City of Monroe on Thursday, November 28th, 1907, and proceeded to act as auctioneer and to sell the lots according

to the terms of the contract. That before the sale of said lots was completed "he was prevented from completing the sale of said lots by the arbitrary order of the defendant," and was at that time "at the premises being offered for sale ready and willing to complete the same, according to the terms of his said contract," and would have completed the sale except for the arbitrary order of defendant, and that the stoppage of the sale was through no fault or act of the plaintiff. That $250 was paid on said contract, but the defendant refuses to pay the remainder. The defendant filed the following demurrer to the petition: "1. That the contract on which said suit is brought is not sufficiently set out. 2. That plaintiff fails to set out the terms of the contract, what lots were to be sold; what he was to do; on what conditions the sale was to take place, etc.; but seeks to set up as the contract a couple of letters attached to his petition as the whole contract. 3. That plaintiff has failed to set out a complete contract between himself and defendant; that said letters do not make a complete contract. 4. That no cause of action is sufficiently set out in the plaintiff's petition." To the overruling of this demurrer the defendant filed exceptions pendente lite. The case proceeded to trial and a verdict was rendered for the plaintiff for the amount sued for "without interest." The judge returned the jury to their room and instructed them that if they found in favor of the plaintiff they must find interest. The jury thereupon returned a verdict in accordance with these instructions. The defendant filed a motion for new trial, amended the same, and brings to this court exceptions to the order overruling it.

■ It might be well to remark that this case is one well illustrative of the "law's delay" spoken of by Shakespeare, for the melancholy Dane in his famous soliloquy asks: "For who would bear the whips and scorns of time, the oppressor's wrong, the proud man's contumely, the pangs of despised love, the law's delay," etc. Filed in 1909, passed on in the lower court in 1935, up for review in this court now. The allegations of the petition sufficiently set forth a mutual and binding contract between the parties. The letters do not of themselves set forth the entire cause of action. A contract for the sale of lots is set forth, the letters show the relationship of the parties, and the petition further alleges a part compliance and offer and willingness to perform by the plaintiff

and the prevention of the completion of the contract by the act of the defendant. A timely special demurrer calling for more details as to the location and number of lots might, if material, have been proper. The demurrer is general in its terms that no complete contract is set out, and the plaintiff in error contends in his brief that it alleges no meeting of minds and that the obligations alleged to have been assumed were too indefinite to be enforced. It seems clear to us that it is alleged that certain lots in the City of Monroe belonging to the defendant were to be sold by the plaintiff as auctioneer and all expenses of the sale to be borne by the defendant, and that the plaintiff was to be paid a flat rate for acting as auctioneer at such sale. If the sale was begun and not completed because the defendant refused to allow it to proceed and without fault on the part of the plaintiff, the plaintiff would be entitled to recover. The defendant in his answer admits the making of part of the contract, but alleges that there were conditions in the contract as to the condition of the weather, size of the crowd at the auction, and amount of bids, and that if he withdrew the remainder of the lots from sale the plaintiff was to be paid on a quantum meruit basis and that the plaintiff had been paid all his services were worth. The jury settled this issue adversely to the defendant's contention. It was not error to overrule the demurrer.

■ Error is further assigned on the ground that at the organization of the court the clerk called a list of the traverse jurors, and they were sworn by the solicitor-general as they stood among the audience in the court-room in answer to their names. After the trial of a case preceding it, the present case was called and the clerk handed to counsel for the defendant a list of 24 names as a panel from which to strike a jury. On this list was the name John B. Still, and the defendant struck this name in his peremptory challenges. A jury was sworn after both sides had struck six names each from the list handed them. The next day on the call of the next case, it was for the first time discovered that John B. Still was not present and had not been present on the preceding day. Neither the defendant nor his counsel knew of this fact until that time. Complaint is made that these circumstances caused the defendant to lose a strike and was a denial of his constitutional rights and in violation of

Code of 1933, § 59-704, which provides for a panel of 24 competent and impartial jurors from which to strike a jury.

In the trial of felony cases, "The clerk shall make out three lists of each panel, and furnish one to the prosecuting counsel, and one to the counsel for the defense. The clerk shall then call over the panel, and it shall be immediately put upon the accused." Code of 1933, § 59-802. If there is no challenge to the array each juror is then called by the clerk, and in calling each juror he should be presented to the accused in such a manner as he can be distinctly seen, and then counsel for the accused or the State may challenge him upon the statutory grounds. *Whitworth* v. *State*, 155 *Ga.* 395 (117 S. E. 450). In felony cases "If a panel of less than forty-eight jurors is put upon the prisoner and he does not challenge the array, but proceeds with the selection of the jury, he can not thereafter, as a matter of right, demand the filling of the panel." *Ivey* v. *State*, 4 *Ga. App.* 828 (62 S. E. 565). "If the panel does not contain the requisite number of jurors when it is put upon the defendant, the law prescribes, in Penal Code, § 972, his sole remedy,—he may challenge the array." *Ivey* v. *State*, supra. In civil and misdemeanor cases the jurors are selected by the parties striking from the list of jurors made up by the clerk. Each juror is not called and put upon the defendant or parties in such cases. In *Mayor &c. Columbus* v. *Goetchius*, 7 *Ga.* 139, and *Justices* v. *Griffin &c. Plank Road Co.*, 15 *Ga.* 39, it was decided that the parties had the right to a jury of impartial jurors, 24 impartial jurors, and to secure this right such jurors might be put upon their voir dire. See also *Howell* v. *Howell*, 59 *Ga.* 145; *Hilton & Dodge Lumber Co.* v. *Ingram*, 135 *Ga.* 696 (70 S. E. 234) ; *Bryan* v. *Moncrief Furnace Co.*, 168 *Ga.* 825 (149 S. E. 193). "A big part of the battle is the selection of the jury." *Melson* v. *Dickson*, 63 *Ga.* 682 (36 Am. R. 128). While the right of trial by jury is fundamental, this right may be waived. The entire jury may be waived and the questions submitted to the court, a full panel may be waived, relationship of the jurors to the opposite party may be waived. Ordinarily in civil cases the clerk of the court makes up the panel of jurors and hands this written list to the counsel selecting the jury. This action of the clerk is not conclusive of the right of either party to make examination for himself as to the selection and qualification of the

panel as a whole or of the qualification of any individual juror thereon. A failure to object to a full panel and the procuring of a jury from an incomplete panel will not afford either party a ground for complaint after verdict. A failure to have the voir dire questions put to each juror will not, after verdict, afford a ground for objection thereto unless the verdict was procured by fraud. An attorney at the bar is an officer of the court just as the clerk is an officer. Each officer is presumed to do his duty. The clerk calls the list of the jury and ascertains those who are present and from this list makes up the panels. In the present case the members of the jury were called from among the audience in the court-room and answered to their names and were sworn by th solicitor-general. It is evident that neither the clerk nor the court, nor the solicitor, nor counsel, observed that James B. Still was not present and sworn with the other jurors in the court-room. His name was placed on the list made up by the clerk. If this name was challenged for proper cause, it could be done, if the proper method of challenge were pursued. *Sullivan* v. *Padrosa,* 122 *Ga.* 338 (50 S. E. 142). In such a case when a challenge is made and improperly overruled but such juror does not serve on the jury trying the case because he is stricken by the complaining party, such ruling is not error unless it appear that the party had to exhaust his peremptory challenges in order to get rid of the juror. *Ford* v. *State,* 12 *Ga. App.* 228 (2) (76 S. E. 1079); *Doyal* v. *State,* 70 *Ga.* 134. In *Ethridge* v. *State,* 163 *Ga.* 186 (136 S. E. 72), 16 R. C. L. 292, § 106, was quoted approvingly, as follows: " In general, where it does not affirmatively appear from the record that a party had exhausted his peremptory challenges at the time the full panel of jurors was accepted and sworn, the appellate court will presume that he was not prejudiced by the action of the court in erroneously disallowing his challenge for cause, and will not grant a reversal for the alleged error." If Still, the absent juror, had been disqualified for any reason, and proper challenge made, and such challenge overruled, and such juror afterwards was stricken by the complaining party, this ruling would not be error except and unless it affirmatively appeared that such party had exhausted his peremptory challenges before a jury had been obtained, or he had exhausted his peremptory challenges in getting rid of the disqualified jurors. In

*Faulkner* v. *State,* 166 *Ga.* 645 (6) (144 S. E. 193), it was held that even though the trial judge improperly overruled the challenge to certain of the jurors, such action, "does not require the grant of a new trial, it not being made to appear that any relative of the living policeman served upon the jury who tried the defendant, or that the defendant was compelled to exhaust his peremptory challenges in getting rid of such relatives, for which reason he could not challenge other objectionable jurors, or that the State was in any way benefited by such ruling." See also *Cabaniss* v. *State,* 8 *Ga. App.* 129 (68 S. E. 849). It would therefore seem apparent that if after proper objection is made to a juror or jurors, and such objection is improperly overruled and the objecting party is not compelled to exhaust his peremptory challenges in getting rid of such juror, and thereby could not challenge peremptorily other objectionable jurors, such action will not require a reversal by an appellate court, and that under such ruling it would seem by analogy that in the absence of a similar showing, the striking of an absent juror was not reversible error. A disqualified juror, propter affectum, on a panel, is the same as no juror, and the panel from which to strike a jury is incomplete. Even so, where such disqualified juror is stricken without exhausting the complaining party's peremptory challenges, no reversible error is committed. Likewise, when the juror is not present but his name is stricken, and the peremptory challenges of the party are not exhausted thereby, no reversible error occurs.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*