A93A0523. FRANKLIN et al. v. TACKETT.
(433 SE2d 710)

McMURRAY, Presiding Judge.

Plaintiffs brought this personal injury action against defendant seeking damages stemming from an automobile collision. Defendant denied liability and the case proceeded to trial. The jury returned a verdict in favor of defendant and judgment was entered accordingly. This appeal followed. *Held*:

1. The plaintiffs are black and defendant is white. There were three blacks on the jury and defendant used his peremptory challenges to strike each one of them. Plaintiffs made a *Batson* (*Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69)) motion and called upon defendant to explain why he struck all of the blacks on the jury panel. Defense counsel offered race-neutral explanations for striking two of the black potential jurors. With regard to the third black potential juror, defense counsel stated: "I don't know why I struck [her]. If I've got to come up with an excuse, I'm sure I could

come up with an excuse. I might ask [plaintiffs' counsel] why he struck the people he struck. I resent it. I resent it that every time a black person is in court or in any place in this society, the first thing that comes to mind from people like [plaintiffs' counsel] is that there's something racial about a case, that there's something racially involved in the case. I resent it, I strongly resent it, I think the system ought to resent it, and I think your Honor ought to resent it. That's the only thing I have to say about this. I would ask that the Court reject his motion, whatever it is. I don't deal in those kind of things so I don't even know what kind of motion he's talking about."

Because defense counsel failed to give a race-neutral reason for striking the third black potential juror, plaintiffs urged the trial court to grant their *Batson* motion and declare a mistrial. The trial court denied the *Batson* motion, after first noting "that it was [plaintiffs' counsel] who injected race into this case" when he probed for bias during voir dire.

Plaintiffs assert the trial court erred in denying their *Batson* motion. We agree.

" '(C)ourts must entertain a challenge to a *private litigant's* racial discriminatory use of peremptory challenges in a *civil trial.*' (Emphasis supplied.) *Edmonson v. Leesville Concrete Co.,* 500 U. S. \_\_\_\_, \_\_\_\_ (II B) (111 SC 2077, 114 LE2d 660) (1991). As the Supreme Court's grant of certiorari and remand in *Chavous v. Brown,* \_\_\_\_ U. S. \_\_\_\_ (111 SC 2791, 115 LE2d 966) (1991), clearly demonstrate, the holding in *Edmondson* does not merely apply to civil actions in federal court. It applies equally to civil actions in state courts." *Strozier v. Clark,* 206 Ga. App. 85, 86 (1) (424 SE2d 368).

"[Defendant] does not contend that employment of peremptory strikes against [all three of the] black potential jurors would not serve to establish a prima facie case of racial discrimination. 'Thus, the only remaining question is whether [defendant] sufficiently showed "that discriminatory purpose was not involved." (Cit.)' *Gamble v. State,* [257 Ga. 325, 326 (357 SE2d 792)]." *Strozier v. Clark,* 206 Ga. App. 85, 87 (3), supra.

We have no hesitation in concluding that defendant failed to show the lack of a discriminatory purpose. Why? Because defendant failed to give a " ' "clear and reasonably specific," explanation of his "legitimate reasons" for exercising the challenges.' *Batson,* supra at 1723, 1724 and 1724 (fn. 20)." *Gamble v. State,* supra at 327. In fact, defendant offered no explanation whatsoever for striking the third black potential juror. Defendant simply stated that he did not know why he struck that juror and resented being called upon to explain his challenges. That statement was wholly insufficient to successfully rebut plaintiffs' prima facie *Batson* case and the trial court clearly erred in ruling otherwise. *Gamble v. State,* supra; *Strozier v. Clark,*

supra.

2. The trial court also erred in refusing to qualify prospective jurors with regard to relationships they may have with any insurance carrier having a financial interest in the outcome of the case. *Weatherbee v. Hutcheson*, 114 Ga. App. 761 (1) (152 SE2d 715). Cf. *Widener v. Mitchell*, 137 Ga. App. 730, 732 (5) (224 SE2d 868). Contrary to defendant's assertion, *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) did not eliminate the practice of qualifying prospective jurors concerning their relationships with insurance carriers involved in a lawsuit.

*Judgment reversed. Cooper, J., concurs. Beasley, P. J., concurs specially.*

BEASLEY, Presiding Judge, concurring specially.

I concur fully in Division 1.

I concur in Division 2 because it applies the law. However, in my view, the qualifying question should not even be asked. A juror would not be biased or prejudiced by having some relationship with an involved insurer if the jurors did not know that an insurer has a financial interest in the outcome of the suit. It is an irrelevant question insofar as the issues and evidence in the lawsuit are concerned, as they will not draw insurance into question. See *Denton v. Con-Way Southern Express*, 261 Ga. 41, 42-43 (402 SE2d 269) (1991), and the authorities cited therein beginning with *City Council of Augusta v. Lee*, 153 Ga. App. 94, 99 (264 SE2d 683) (1980).[1]

By asking the question, the subject of insurance is obliquely introduced into the lawsuit. If the suit is merely one by an injured party against an alleged tortfeasor, the jurors can surmise by the question that the insurer is defendant's. This may color the verdict. Of course, as pointed out in *Weatherbee v. Hutcheson*, 114 Ga. App. 761 (1) (152 SE2d 715) (1966), the carriers of both parties may be involved, as in the event of a cross-action or subrogation. The jurors should not be given the opportunity to guess by the suggestive question. Even if their guess is accurate, the connection is irrelevant and should not be a factor in their deliberations.

Indeed, it has long been the law that "[i]n an ordinary negligence case, not only is a liability insurance policy of a litigant not admissible in evidence, but disclosure to the jury of the mere existence of such contract is ground for a mistrial." *Patillo v. Thompson*, 106 Ga. App. 808, 809 (1) (128 SE2d 656) (1962); *Goins v. Glisson*, 163 Ga. App. 290, 292 (1) (292 SE2d 917) (1982). Yet we tell them during the jury selection process, indirectly but no less certainly, that the inter-

---

[1] *Denton* was disapproved to the extent that it suggested a new equal protection analysis, in *Grissom v. Gleason*, 262 Ga. 374, 376 (2) (418 SE2d 27) (1992).

est of an insurance company is at stake. To say that they are charged to confine their deliberations to the *evidence* ignores the impression already made.

The disqualification is based on the immutable principle that jurors must be omni exceptione majus, which means "above all exception." Black's Law Dictionary 1238 (Rev. 4th ed. 1968). The sine qua non of our American adjudication process is a fair and unbiased decision-maker, be it judge or jury. "A jury trial is a travesty unless the jurors are impartial." *Atlanta Coast Line R. Co. v. Bunn*, 2 Ga. App. 305, 306 (58 SE 538) (1907). No less now than in 1879, "A big part of the battle is the selection of the jury, and an impartial jury is the corner-stone of the fairness of trial by jury." *Melson v. Dickson*, 63 Ga. 682, 686 (1) (1879).

So it was held over a hundred years ago, based on the common-law exclusion of all servants, that an employee of a defendant is properly rejected as a juror. *Central R. Co. v. Mitchell*, 63 Ga. 173, 179 (1879). As the court recognized in that case, "It is almost impossible, however incorruptible one may be, not to bend before the weight of interest. . . ." Of course, in such instances the employee would know of the employer's interest because of its status as a party. The rule of exclusion of the employee of a party is a rule of safety "which recognizes the influence to which humanity is generally susceptible." *Atlantic Coast Line R. Co.*, supra. In that case, the rule was applied to employees of *plaintiff*, the court pointing out that "[t]he employees of a plaintiff should be disqualified as jurors for the same reason that they would be if they were the employees of the defendant; and the employees of a person or partnership should be disqualified for the reason that would disqualify them if they were the employees of a corporation." Id. at 306.

*City of Sandersville v. Moye*, 25 Ga. App. 64 (4) (102 SE 552) (1920), seems to be the first case which held that jurors are disqualified if they or their relatives are stockholders of a *non-party* company which had written a bond to indemnify defendant from liability.

The practice of qualifying jurors as to non-party insurers was followed in *Bibb Mfg. Co. v. Williams*, 36 Ga. App. 605, 607 (1) (137 SE 636) (1927). The court acknowledged that evidence of liability insurance is inadmissible, "as being irrelevant and immaterial," and a mistrial should be granted if mere exclusion and appropriate instructions "can not disabuse the prejudicial impression created upon the jury." However, it went on to state, where defendant is insured, "the employees, stockholders, and relatives of stockholders of the insurance carrier are disqualified to serve as jurors in the case." As to the method of ascertaining this relationship, it was held not to be an abuse of discretion for the court to inquire whether any juror is an employee or stockholder of, or related to a stockholder of, the insur-

ance company. This was followed in *Farrar v. Farrar*, 41 Ga. App. 120 (1) (152 SE 278) (1930). This of course introduces the subject of insurance to all jurors; it does not simply ferret out those who might be disqualified. And therein lies the evil of this method.

The first Supreme Court case on the subject is apparently *Atlanta Coach Co. v. Cobb*, 178 Ga. 544, 549 (174 SE 131) (1934), where the Court held that a jury should be qualified as to an indemnity company which is pecuniarily interested though not a party to the record. The court goes back to *Bryan v. Moncrief Furnace Co.*, 168 Ga. 825 (149 SE 193) (1929), which applied the rule that jurors may be challenged propter affectum for suspicion of bias or partiality, which challenge may be either a principal challenge or a challenge to the favor. "A principal challenge is where the cause assigned carries with it prima facie evident marks of suspicion, either of malice or favor, as that a juror . . . has an interest in the cause. . . ." *Bryan*, supra at 825 (1) (a). Penal Code § 858, which applied to civil and misdemeanor cases, is cited as authority. *Bryan*, supra at 827. *Bryan* involved jurors who were members of an organization which was a *party* in the lawsuit. The court in *Atlanta Coach Co.*, extrapolated and stated its view that "[u]ndoubtedly an officer, employee, or stockholder of the indemnity company, or one related to a stockholder, would be disqualified as a matter of law to serve as a juror in such case, and there is no contention to the contrary by counsel in the present case. Cf. *Dobbins v. Marietta*, 148 Ga. 467 . . . [(1918)]." *Atlanta Coach Co.*, supra at 549.

*Dobbins* applied the statute which is now substantially OCGA § 15-1-8, to the effect that a judge cannot sit in any case or proceeding in which he is pecuniarily interested, or related to either party within a specified degree of consanguinity or affinity. "The word 'party' . . . 'would include any one pecuniarily interested in the result of the case,' and would not be limited 'to a person who is a party to the record.' [Cits.]" *Dobbins v. City of Marietta,* 148 Ga. 467, 468 (97 SE 439) (1918).

Does this not presuppose the factfinder's *knowledge* of the non-party's interest, before it can affect the factfinder's decision-making? *Bryan* mentions the underlying principle to be served: *"omni exceptione majores."*

If the decision-maker has an interest or stake in the outcome, he or she cannot be unbiased, despite all efforts; the inability to totally divorce oneself from one's interest is in the nature of the human mind. If there is someone or some entity which has an interest in the outcome, and the decision-maker is connected to that entity whereby the outcome will affect the decision-maker as well, then the decision-maker cannot be unbiased if he knows of the entity's interest. But if he or she is oblivious to it, then it cannot be a factor in the decision-

making. It is simply not part of the universe of influences.

So, with respect to an employee, or officer, or stockholder of an insurance company which has an interest in the outcome, or policyholder of a mutual insurance company, if such a juror does not know of it, it cannot color his or her participation in reaching a verdict. The minute it is mentioned, of course such juror becomes disqualified. So why mention it? It only contaminates the whole jury with the knowledge that some party's insurance company is involved. This was admitted in *Elsberry v. Lewis*, 140 Ga. App. 324, 325 (2) (231 SE2d 789) (1976): "no jury can remain ignorant after the qualification questions that the named company is interested in the litigation in some way." Far better it would be to ferret out the insurer's employees and officers, if such need be, by simply asking for jurors' occupations and then, having disclosed *only* to the judge the identity and interest of the insurer, challenge for a cause not revealed to the prospective juror. Stockholders and policyholders of mutual companies (but not policyholders of stock companies, see *Weatherbee,* supra at 765; OCGA § 33-14-2), can be ascertained by juror questionnaires which ask for stock ownership by the juror or spouse, or by the simple expedient of asking what stock, if any, the jurors own. While this may take a little time, it would assure the true objective of excluding insurance coverage from becoming a factor in the case's adjudication. But as I said earlier, it would appear that these people would not be challengeable for cause *unless* they knew of the connection.

It is a case of letting the cat out of the bag. Why do it, when the harm sought to be avoided is avoided by simply keeping it in?

There is a flaw in the reasoning in the Court of Appeals' *Bibb Mfg. Co.* and the Supreme Court's *Atlanta Coach Co.* cases and their progeny. It is demonstrated in the conclusion in *Atlanta Coach Co.* that "where . . . an indemnity company is pecuniarily interested though not a party to the record . . . [u]ndoubtedly an officer, employee, or stockholder of the indemnity company, or one related to a stockholder, would be disqualified as a matter of law to serve as a juror in such case. . . ." *Atlanta Coach Co.,* supra at 549. The flaw is that the reasoning overlooked the poisoning ingredient of knowledge. Without the link of knowledge, there is no *disqualifying* interest, because the interest will not affect the decision-making.

Immediately after presenting this reasoning, *Atlanta Coach Co.* notes: "Cf. *Dobbins v. Marietta*, 148 Ga. 467 (97 S. E. 439) [(1918)]." In that case, a judge had erroneously not disqualified himself from a suit in which certain non-party property owners and taxpayers to whom he was related had an interest. Although the short opinion does not say so, it is apparent that the judge knew of the interest. It related to public action of the city to pave a certain street and sidewalk which would require assessments against abutting property owners

and taxpayers. The four earlier cases cited all describe instances where the disqualified decision-maker would also have known of the connection: *Roberts v. Roberts*, 115 Ga. 259 (41 SE 616) (1902) (the judge was related to counsel, whose fee was contingent); *State Mut. Life Ins. Co. v. Walton*, 142 Ga. 765 (83 SE 656) (1914) (the judge was related to the beneficiary of a life policy issued by the company against which a receivership was sought); *Mayor &c. of Columbus v. Goetchius*, 7 Ga. 139 (1849) (city taxpayers are incompetent to try a case in which they were liable to be taxed to pay the judgment; they could be "challenged, *propter affectum*, for suspicion of bias or partiality." Id. at 142); *Central of Ga. R. Co. v. Hammond*, 109 Ga. 383 (34 SE 594) (1899) (mistrial demanded when juror had, after jury dispersed for night, shared a drink and a cigar and a bed with plaintiff's witness/counsel's assistant).

The court in *Atlanta Coach Co.*, recognizes that mention of an indemnity contract or any other "impertinent" reference would be objectionable but differentiates this inquiry as "a bona fide effort to preserve the right of trial by an impartial jury." Its recitation of the *rule* is correct: "Where there is reasonable cause to believe that a juror may be . . . disqualified, it is not only proper but apparently necessary that he should be placed upon his voir dire for the purpose of determining this question, and *whatever is necessary for the proper and orderly conduct of a trial or for the selection of a competent and impartial jury therefor can not be said to be erroneous.*" (Emphasis in original.) *Atlanta Coach Co.*, supra at 549. It is the application of this rule that suffers a missing link. There is not reasonable cause to believe that a juror would be biased if he did not know that an insurance company in which he had a pecuniary interest itself had an interest in the suit's outcome. Innocence of the fact would protect the integrity of the verdict.

*Atlanta Coach Co.* was immediately followed in *Tatum v. Croswell*, 178 Ga. 679 (174 SE 140) (1934) (it was error for the judge not to qualify jurors with regard to whether any were employees, stockholders, or related to stockholders in defendant's non-party insurer); and *Coleman v. Newsome*, 179 Ga. 47 (174 SE 923) (1934) (it was error for the judge not to qualify the jurors with respect to whether any were employees of the non-party interested insurer, some of whose employees worked in the county from which jurors were drawn).

In sum, in qualifying the jury, if it is indeed harmful to allow an insurer's employee or other connected person to serve even if he or she does not know of the insurer's interest in the case, the method for ascertaining such relationships with the non-party insurer should not be a direct question identifying the insurer or insurance, because this draws the forbidden subject inexcisably into the mix of influences on

the jury's deliberations. The jurors might be asked instead, for instance, whether any of them is connected in any way to anyone or to any company which has a financial interest in the outcome of the case. If he or she *is* an employee or stockholder, etc., and if he or she *knows* of the company's interest, it can be related to the court without the knowledge of the other jurors so as not to contaminate them with knowledge of the insurer's interest.

See 56 ALR 1454, "Right to interrogate jurors on voir dire with reference to insurance," and 4 ALR2d 792, "Questioning jurors on the voir dire regarding insurance."

Competing here are the right of plaintiff to exclude from the jury persons interested in the insurer which is the real party in interest on the defense side, on the one hand, versus the right of defendant to the exclusion of the subject of insurance which might cause jurors to conclude that defendant was less careful because he knew he was insured or that an insurance company rather than defendant personally would have to pay the judgment, on the other hand.

DECIDED JULY 13, 1993.

*Kenneth L. Shigley,* for appellants.
*Tisinger, Vance & Greer, Thomas E. Greer, Douglas C. Vassy, J. Branson Parker,* for appellee.