34512. SHEPHERD CONSTRUCTION CO., INC. *et al. v.* VAUGHN.

DECIDED MAY 27, 1953.

*Gambrell, Harlan, Barwick, Russell & Smith, Clifford Seay,* for plaintiffs in error.

*Kennedy & Kennedy,* contra.

SUTTON, C. J. 1. The defendants contend, in the first special ground of their motion for new trial, that the court erred in qualifying the jury panel as to their interest in American Automobile Insurance Company of St. Louis, over the objection that the policy of insurance was the only evidence of insurance coverage but was not produced, and that to qualify the jury in this

respect would prejudice the defendants' position. The court stated, among other things, in its order refusing a new trial: "In considering ground 1 of the amended motion, the court has had before it the record, attached to the transcript of evidence, of the hearing in chambers of the issue [of] whether or not the jury should be purged as to interest in the insurance company represented by Messrs. Gambrell, Harlan, Barwick, Russell & Smith, of counsel for the defendants; and this record is referred to and by reference made a part of this judgment. It appears therein that Mr. Cook Barwick, of that firm, phoned the court on the eve of his departure on a European vacation, that he was arranging his calendar with this trip in view, and that his firm represented an insurance company which was interested in this suit because of having issued a policy indemnifying Shepherd Construction Company against liability for personal injuries, but not against liability for property damage. Both items of alleged damage were claimed in this suit, and he wished to file an intervention in behalf of the insurer, asking that a lump-sum verdict be not returned in the case, but that the verdict rendered specify what, if any, damages were assessed for personal injuries and what amount, if any, for property damage, as otherwise his client could not know what its liability was. The court was unwilling to agree to this intervention without a hearing on the point, and referred Mr. Barwick to counsel for plaintiff. *At the hearing in chambers, it was agreed that these facts might be stated by the court for the record.*

"Mr. Kennedy, for plaintiff, also stated that Mr. Barwick then communicated with him, and he indicated his willingness, if his client concurred, to have the intervention filed and allowed.

"This intervention was not filed. Thereafter, Mr. George Smith, of the same firm as Mr. Barwick, appeared as counsel in the case, participating actively in its preparation by taking depositions, and in other ways; and at the trial, was present, admitting he represented the insurance company in question, and would appear as counsel in the trial of the case." (Emphasis supplied.)

It was stated and ruled in *Farrar* v. *Farrar*, 41 *Ga. App.* 120 (152 S. E. 278): "In a suit for personal injuries, where it was made to appear to the court, on private inquiry conducted out

of the hearing of the jury, that the defendant was protected by liability insurance, and that the insurance carrier was thus pecuniarily interested in the result of the suit, and no proof was submitted on behalf of either party to show whether an employee or a stockholder or relative of a stockholder of the insurance carrier was on the jury, it can not be said as a matter of law that a request of the plaintiff to purge the jury with reference to the insurance carrier was submitted in bad faith and solely for the purpose of informing the jury that the defendant was protected by liability insurance.  Nor can it be said that it was an abuse of discretion so to purge the jury."  Also see *Atlanta Coach Co.* v. *Cobb*, 178 *Ga.* 544 (1) (174 S. E. 131); *Rogers* v. *McKinley*, 52 *Ga. App.* 161 (3) (182 S. E. 805); *Reynolds* v. *Satterfield*, 86 *Ga. App.* 816 (72 S. E. 2d 811).

Under the circumstances of this case, there was a strong probability that the insurance company was to some extent interested in the outcome of the case, and this was sufficient to authorize the trial judge to qualify the jury panel with respect to their interest in the insurance company.

2.  Special grounds 2 and 3 have been abandoned.  Complaint is made in special ground 4 that the court failed "to inform the jury at all as to the rule for determining the damages claimed by the plaintiff for the loss of his wife's services for time in the future beyond the date of the trial," and failed to instruct the jury that such damages must be reduced to present value.  It was alleged in the petition that the plaintiff had permanently lost the services of his wife, of the value of $150 per month, as a result of the nuisance maintained by the defendants.  The plaintiff testified that he had completely lost the services of his wife, as her cancer was aggravated by the dust from the asphalt plant, and that his wife had never recovered from her nervousness.

The court, in passing upon the motion for new trial, pointed out that the defendants made a written request for the following charge, which was given by the court:  "I charge you further, gentlemen, that the plaintiff is not entitled to recover in this action for any worry or pain suffered by his wife unless such was accompanied by actual physical injury done to his wife by the asphalt plant and then only if such worry or pain actually

caused him to lose his wife's services,—and then only to the extent and value of such services for the period lost. Further, such loss of services, in order to be the subject of recovery, must be the direct and proximate result of the operation of the asphalt plant, and the plaintiff may recover only for the loss of services so caused." The defendants, by making this request, invoked the ruling that the plaintiff could recover the value of his wife's services *for the period lost*, whether that period was before the time of the trial, or afterwards, or both. They cannot now complain that the court failed to qualify and perfect the terms of their requested charge by adding to it the rule of reduction to present value of future damages.

3. The movants assign error upon the following portion of the charge of the court in special ground 5: "If you find under the rules given you in charge that the plaintiff is entitled to recover, he would be entitled to recover reasonable compensation for such mental and physical pain and suffering as he experienced as a direct and proximate result of the injury sustained upon the occasion under investigation. The guide for the jury in determining compensation for mental and physical pain and suffering is the enlightened conscience of impartial jurors, acting under the sanctity of their oath to compensate the plaintiff with fairness to the defendant.

"If you find that the injury is permanent and likely to cause plaintiff future pain and suffering, and to impair in the future his ability to labor, you would also be authorized to consider those elements of damage; and, if you find any amount for such elements, you must reduce any amount so found for future impairment, if any, of his ability to labor, to its present cash value figured at the rate of seven percent per annum. The guide for fixing damages, if any, for pain and suffering or diminished capacity to labor is the enlightened consciences of impartial jurors acting under the sanctity of their oath.

"Gentlemen, in this connection, certain tables have been introduced in evidence before you, known as mortality tables, which may be used by you in considering the life expectancy of the plaintiff, should you find that that was involved. These tables are not binding on you and you are not obliged to use

them, but you may refer to them, if you wish, in considering this aspect of the case."

The movants contend that this charge was erroneous and unsound as a matter of law, confusing and misleading to the jury, and incomplete in the following respects: (1) it failed to distinguish between loss of earnings and loss of capacity to labor; (2) it led the jury to believe that the measure of damages for loss of earnings in the future is the enlightened consciences of the jurors, instead of the difference between what the plaintiff will actually earn and what he would have earned if he had not been injured; (3) it failed to inform the jury that damages could be awarded only for the period of duration of the injury if found to be temporary; and (4) it failed to call the jury's attention to the fact that the plaintiff's earning capacity would normally decrease in his declining years.

It is further contended that the charge was not adjusted to the evidence in the case, there being evidence to the effect that the plaintiff worked as a plasterer; that plasterers earn $100 per week, and that his capacity to labor was reduced 50% because of the defendant's acts. However, this ground of the motion fails to show any claim by the plaintiff in his petition for damages by way of decreased future earnings, or that there was any evidence that the plaintiff's actual earnings had been or would be diminished. Therefore, it was not error to fail to include in the charge any reference to loss of earnings.

The court, in the charge here complained of, dealt only with the impairment of the plaintiff's ability to work, as an element of pain and suffering, which is to be measured by the enlightened consciences of the jurors, etc. While the charge was concerned only with the theory that the plaintiff's injuries were permanent, this ground of the motion does not show that there was any issue under the pleadings and the evidence as to whether the injuries were temporary or permanent, and so fails to show that the charge was erroneous in this respect. The omission to call the jury's attention to the normal diminution of the plaintiff's earning capacity in his declining years was not erroneous in the present charge, which dealt with loss of ability to labor as an element of pain and suffering, and not with loss of earnings.

4. In special ground 6 of the motion, the movants complain

of the last paragraph of the charge set out in the third division of this opinion, above, on the ground that the jury was not instructed to use the mortality tables only if the plaintiff's injuries were found to be permanent. It may be seen that, immediately before giving the charge complained of in this ground, the judge had charged with reference to damages for pain and suffering and impairment of ability to labor, should the jury find that the injury was permanent. In the excerpt complained of, the court stated that, *"in this connection,"* the mortality tables were in evidence and might be used by the jury in considering the life expectancy of the plaintiff, *should the jury find that that was involved.* This reference to the previous part of his charge, in which he dealt with permanent injuries, was sufficient to show the jury that the mortality tables were to be used only if the plaintiff's injuries were found to be permanent, and this ground shows no error.

5. The movants contend in special ground 7 that the following charge was erroneous, in that it instructed the jury that the plaintiff might recover damages for his annoyance and discomfort in addition to damages for his pain and suffering: "I charge you that in an action such as this, if a plaintiff is entitled to recover, he is entitled to recover all of the direct damages resulting to him from the nuisance. He may recover for the diminution of the market value of his property, both real and personal, if there is a diminution of such property chargeable to such nuisance. He may recover for any illness suffered by him, including his loss, if any, of the capacity to labor, as well as for his own pain and suffering. . . He may also recover for the annoyance and discomfort inflicted upon him by the maintenance of the alleged nuisance."

"The owner of a dwelling house which he himself occupies as a home is entitled to just compensation for the annoyance and discomfort occasioned by the maintenance by another of a nuisance on adjacent premises." *Swift* v. *Broyles*, 115 *Ga.* 885 (42 S. E. 277, 58 L.R.A. 390). Such an owner-occupant is entitled to recover damages for annoyance and discomfort temporarily depriving him of the unrestricted use and full enjoyment of his premises, in addition to damages for permanent injury to the freehold and for pain and suffering as a result of the maintenance

of a nuisance. *Sam Finley Inc.* v. *Russell,* 75 *Ga. App.* 112, 118 (3) (42 S. E. 2d 452). This ground of the motion does not show error.

6. In special ground 8 the movants assign error on the charge of the court to the effect that the plaintiff, if entitled to recover, could recover for the diminution of the market value of his property, both real and personal, if there was a "diminution of such property chargeable to such nuisance." The movants contend that this charge authorized the jury to award damages for permanent injury to the plaintiff's property, whereas it was shown that the nuisance was only temporary, having been abated four months prior to the trial. However, "In the case of a private abatable nuisance, such as the one here involved [the operation of an asphalt mixing plant], the plaintiff is entitled to recover for any direct damage to his person or to his property resulting from the nuisance, accruing within the statute of limitations and up to the filing of the petition." *Sam Finley, Inc.* v. *Russell,* supra, p. 117. And it was held in that case that, under the allegations of the petition, the plaintiff was entitled to recover damages for permanent injury to his property, as measured by the diminished value thereof. This ground of the motion shows that the plaintiff in his petition claimed damages for injury to his home and the land on which his home stood, and to his household goods and personal effects, and that he submitted proof in support of such claim. It is not contended that there was no evidence of permanent injury to some of the plaintiff's property. If permanent injury is sustained as the result of the maintenance of a nuisance, then the owner of the property damaged is entitled to compensation for such permanent injury, whether the nuisance is abated or abatable. See 39 Am. Jur. 396, § 134; 66 C. J. S. 976, § 171. This charge as to the measure of damages was not incorrect.

7. In special ground 9, it is contended that the court erred in failing to instruct the jury that, before they could return a verdict against any one of the defendants, they would have to find first that the acts of misfeasance or nonfeasance of such defendant, as alleged in the petition, were the proximate cause of the plaintiff's alleged injuries. The ground also shows that the court charged as follows: "If you find that there was a

nuisance against the plaintiff and in addition thereto, the plaintiff, as a direct and proximate result of such conduct as is alleged on the part of the defendant, or his property was directly or proximately injured or damaged pecuniarily, he, the plaintiff, would be entitled to recover for such amount as you find from the evidence to be reasonable and necessary to make him whole as against any damage which you find was thus caused by the defendant, as a result and the proximate result caused by the defendant's conduct as alleged." The movants contend that there were four separate defendants, the corporation and the three individuals, each allegedly the servant of the corporation, and that the court did not instruct the jury that each individual defendant would be liable only if his own acts, or those of his servants, proximately caused the plaintiff's alleged injuries, in which respect the charge was not adjusted to the evidence, and that the court's failure to charge as aforesaid led the jury to believe that the maintenance of a nuisance by any one defendant alone would authorize them to return a verdict against all of the defendants.

The only complaint made of "the charge" as given was that it was not adjusted to the evidence, but the substance of the evidence is not set out, and in this respect the ground is incomplete. While the charge quoted in this ground shows a probable slip of the tongue in speaking of "defendant" in the singular rather than in the plural, no error is assigned upon the quoted excerpt.

Following the excerpt quoted in this ground, and after stating that he had charged *generally* as to the law of the case, the judge also charged: "This action is brought against all four defendants on the theory which the court has just stated to you [Code, § 105-108, pertaining to respondeat superior] and the allegation that the three servants and agents were then operating within the scope of their authority with Shepherd Construction Company and that they are also named as defendants because it is alleged that all four are jointly and severally liable for injuries and damage sustained by the plaintiff as the proximate result of their acts and doings. It is for you to pass, gentlemen, on all questions in the case, including the liability of each defendant, if any, for such acts and express your findings by verdict as to all of the defendants."

The court further stated to the jury: "I have already charged you as to the burden of proof and the preponderance of evidence, and the other features of law applicable to this case; and I charge you at this time, gentlemen, that these principles of law apply as to the suit against each and all of these four named defendants, and that before you find a verdict in favor of the plaintiff and against any particular one of the defendants, you must be convinced that the plaintiff, Mr. Vaughn, has carried the burden of proof imposed upon him by law by a preponderance of the evidence and has satisfied you of his right to recover against that particular defendant. That statement applies to all four of the defendants, gentlemen, and will guide you throughout your deliberations."

The court in its charge to the jury did not omit to instruct them that they would have to find that the alleged conduct of any one of the defendants was the proximate cause of the plaintiff's alleged injuries before they could return a verdict against that defendant, and so the jury were not led to believe that the maintenance of a nuisance by any one of the defendants would authorize them to return a verdict against all of the defendants. Ground 9 is without merit.

8. The movants contend in special ground 10 of their motion for new trial that the verdict for $18,000 was not supported by the evidence, and was so excessive as to show that the jury were biased and prejudiced against the defendants. With regard to the contention last stated, it was said in *Atlantic Greyhound Corp.* v. *Austin,* 72 *Ga. App.* 289, 292 (33 S. E. 2d 718): "This court does not have as broad discretionary powers as are conferred on trial judges in setting aside verdicts as excessive. When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, we are not authorized to set it aside as being excessive."

The main contention of the movants in this ground is that the plaintiff failed to show substantial injury to his person and property as the result of the operation of the asphalt mixing plant by the defendants. On the trial of the case, it was not

controverted that some dust, smoke, grit, and fumes from the defendants' plant were blown from the plant onto the plaintiff's property. The main issue on the trial was the effect of these foreign substances and whether or not the plaintiff was damaged thereby. The jury chose to accept the plaintiff's evidence in this respect, and they were authorized by such evidence to find the following damages for the plaintiff: The plaintiff's house and pasture land were worth $14,000 at the time the asphalt mixing plant began operations in August or September of 1951. The dust killed the grasses in the pasture and finished it; the stucco exterior of the house was discolored by the dust; and the painted woodwork, plaster walls, and floors on the inside of the house were scarred and scratched, and would have to be re-finished. The house and land were worth only $7,000 when the asphalt plant stopped operating in April, 1952.

The personal property of the plaintiff was worth $3,500 before the operation of the asphalt plant, and was worth only $1,000 afterwards. Dirt and grit from the plant got into his clothing, requiring increased laundering and causing it to wear out faster. The dirt became embedded in the drapery and in the upholstery of the furniture, disfiguring the material and causing it to wear; all of the furniture was scratched. Several electric motors on household appliances burned out from dust in their wiring; a refrigerator unit burned out because a valve became choked with dust; a thermostat on the stove was clogged by dust and had to be replaced; the plaintiff's horse became sick, and six hogs acquired a cough and died from the dust.

During the operation of the plant by the defendants the dust seeped into the plaintiff's house and was in the air around the house. The plaintiff and his wife inhaled the dust; it settled upon their food, and the house could not be kept clean. The plaintiff's wife became nervous and emotional; she could not stay in the house during the day, and was unable to perform the usual services of a housewife for her husband for a period of about four months. The dust aggravated the plaintiff's sinus condition, causing his nasal passages to close with resultant painful infections. The jury was authorized to find that such infections also aggravated the bursitis or arthritic pains in the plaintiff's shoulder, and thereby impaired his ability to work as a plasterer by 50%.

As for the plaintiff's loss of his wife's services, there need be no direct or express evidence of their value, but, in calculating the reasonable value of such services as have been lost, the jury may take into consideration the nature of the services and all the circumstances of the case. *Metropolitan St. R. Co.* v. *Johnson,* 91 *Ga.* 466 (3) (18 S. E. 816).

As for the plaintiff's pain and suffering and loss of ability to work, "It is the fact of impairment or loss of ability to work, with or without compensation, that is to be considered by the jury in determining the amount to be allowed for pain and suffering, and no evidence as to earnings is necessary in such calculation, the only standard of measurement being the enlightened conscience of impartial jurors." *Railway Express Agency* v. *Standridge,* 68 *Ga. App.* 836, 837 (24 S. E. 2d 504), and citations.

There being evidence in support of the special damages to the extent of $9,500, the total verdict of $18,000 was authorized by the evidence, and so cannot be said to have been excessive.

9. The verdict being authorized by the evidence, and no error appearing in the special grounds of the motion for new trial, the court did not err in denying a new trial.

*Judgment affirmed. Gardner, P. J., Townsend, Worrill, and Carlisle, JJ., concur. Felton, J., dissents.*

FELTON, J., dissenting. 1. I do not think the court was right in qualifying the jury as to their interest in an insurance company and relationship to stockholders and officers, etc., under the circumstances of this case. As the majority opinion does not disclose all of the facts in connection with the first special ground of the amended motion for new trial, it will be necessary for me to add additional facts shown by the record in order to make my position clear and understandable. The trial judge stated in his order overruling the motion for a new trial: "The fact that there may be a dispute between his client and the Shepherd defendant as to the details of liability, or amount thereof, is immaterial, if there was a policy, *under which counsel has admitted to the court that the insurer is liable for the personal injuries,* if any." (Emphasis supplied.) It may be that if any counsel for the insurance company, representing the insured, had made a binding admission in judicio to the effect that there was a policy of insurance covering a part of the damages

sued for, the defendants would be estopped to raise the question under discussion. However, under the facts, I do not think that any such admission was made. The record shows that the so-called admission, referred to by the judge in his order, was a statement made to him in connection with the proposed filing by the insurance company of an intervention in an effort to protect the rights of the insurance company. The statement was made by a partner of the attorney who represented the defendants at the trial and who was employed by the insurance company. This attorney stated to the court in connection with the discussion as to the filing of the intervention that the insured defendant's policy covered only personal injuries. The insurance company's attorney, representing the defendants, stated at the time of the trial that he did not concede that there was any insurance coverage, and objected to the qualification of the jury as to the insurance company, etc., on the ground that the policy of insurance was the only competent evidence of insurance coverage since the plaintiff neither produced the policy nor gave notice to produce, nor proved that the policy was lost, destroyed, or out of the State. At the time of the so-called admission by one of the attorneys for the insurance company, it did not appear that he was representing the defendants in this case, and there is no evidence of any ratification by any defendant of such an admission with full knowledge of the facts. Such an admission certainly cannot bind the defendants in this case, when they in effect repudiate the admission and when their attorney, even though representing the insurance company also, refuses to concede insurance coverage and demands a legal finding as to insurance coverage. I think the consequences of the majority ruling in this case can be tragic if this practice is followed. The mere fact that an insurance company's attorney assists a defendant in the trial of a case is not a ground upon which to base the qualification of a jury as was done in this case. The law requires more than a strong probability that the insurance company is financially interested in the outcome of the case. Only an admission by authorized counsel in judicio or proof of insurance coverage is legally sufficient.

2. I think the court erred in failing to instruct the jury that, if they found that the plaintiff would suffer the loss of his wife's

services in the future by reason of the acts complained of, they should reduce the sum so found to its present value. The defendant's request to charge did not cover that subject matter, and a party does not waive the giving of a correct charge on one subject by requesting a charge on another subject, even if the two are related.

3. The charge complained of in special ground five is erroneous because it confuses the issues as to loss of earnings with loss of ability to labor and earn money. In my opinion, both the pleadings and the evidence make jury issues as to both elements of damages. The plaintiff's amendment of August 22, 1952, alleged that his earning capacity had been reduced, and the plaintiff testified that he was capable of earning $100 per week as a plasterer before the injury and that his earning capacity had been reduced 50%.

4. The charge complained of in ground seven was not error for the reason assigned, but I should like to make it clear that I do not think the charge was correct as applied to the facts of this case. Ordinarily, the plaintiff would have been entitled to recover for the annoyance and discomfort caused by the nuisance, as an element of damage distinct from pain and suffering, but such damage would be the diminution in the rental value of the property for the duration of the nuisance. *Swift* v. *Broyles,* 115 *Ga.* 885. In this case, since damages for permanent injury to the plaintiff's premises were sued for, the finding of damages for diminution in rental value would have been double recovery to such extent.