### 44885. YOUNG v. CARTER.

PER CURIAM. Defendant appeals from an order overruling his motion for new trial in a personal injury suit. The trial court directed a verdict on the issue of liability and the jury returned a verdict of $10,000. He contends the trial court erred in overruling his motion for mistrial based upon the following statement made by the plaintiff's attorney in his opening remarks to the jury: ". . . we will show that the defendant at that time made a statement to the

lady, and insisted that she go to the doctor, that he stated that to her, that it was his fault—that his insurance company would take care of it for her. . ."

"Admissions against interest are such even though they may contain a suggestion that the party making them carries insurance, and the mere fact, that insurance, or an insurance company, is mentioned as an inextricable part of the statement made by such party or conversation in which he indulged, does not make the evidence inadmissible when offered by the opposite party." *Wade v. Drinkard,* 76 Ga. App. 159 (5a) (45 SE2d 231); *Hix v. Headrick,* 97 Ga. App. 540 (103 SE2d 516). If the statement is admissible in evidence as an integral part of an admission, it necessarily follows that an attorney has the right to say in his opening statement that he expects to prove this admission.

*Judgment affirmed. Hall, P. J., Pannell and Quillian, JJ., concur.*

ARGUED NOVEMBER 5, 1969—DECIDED JANUARY 28, 1970— REHEARING DENIED FEBRUARY 16, 1970—

*Bouhan, Williams & Levy, Frank W. Seiler,* for appellant.
*Austin, Pahno & Herndon, Donald E. Austin,* for appellee.

HALL, Presiding Judge, concurring. In my opinion, the trial judge had no alternative under Georgia court decisions but to rule as he did in this case. However, I think the time has come to end this continuing charade over whether or not a defendant has liability insurance. It holds the law up to ridicule by laymen and thereby contributes to an unfortunate disrespect for law, order, courts and justice.

This case is a perfect example of the application of Georgia's irrational rules. We begin with a sanctimonious principle of law that it is reversible error to admit evidence of liability insurance (*O'Neill Mfg. Co. v. Pruitt,* 110 Ga. 577 (36 SE 59)), the theory being that the fact of insurance "tends to influence and prejudice jurors by imparting to them the information that whatever verdict they may render will be immaterial to the defendant, since he will not have to pay it.' 29 AmJur2d 458, Evidence, § 404. As to the predictability of

our courts on whether this requires the grant of a mistrial, see *Thomas Milling Co. v. Branch,* 118 Ga. App. 857 (165 SE2d 907) and *Wallace v. Cates,* 120 Ga. App. 228 (170 SE2d 40). The effect of the rule prohibiting reference to liability insurance is then nullified by having the trial judge qualify the jury as to the defendant's liability insurer. *Atlanta Coach Co. v. Cobb,* 178 Ga. 544 (174 SE 131); *Reynolds v. Satterfield,* 86 Ga. App. 816 (72 SE2d 811). The objection here relates to insurers, stockholders and employees and their relatives and is based upon the theory that this is necessary to obtain an unbiased jury. If it does not appear whether or not the insurer is a "mutual" or "stock" company, the attorney for the plaintiff can then qualify the jury as to whether any of them are policy-holders of the named insurer. *Parker v. Bryan,* 96 Ga. App. 283 (99 SE2d 810); *Williams v. Lane,* 103 Ga. App. 150 (118 SE2d 730); *Weatherbee v. Hutcheson,* 114 Ga. App. 761 (152 SE2d 715). Any juror who doesn't know that there is liability insurance in the case by this time should probably be excused by virtue of the fact that he or she is an idiot.

In the present case the court inquired whether or not insurance was involved. Defense counsel admitted out of hearing of the jury that Travelers Insurance Company had a financial interest in the case. On voir dire, the court asked the jurors if any of them were officers, agents, employees or stockholders in Travelers Insurance Company. The plaintiff's counsel then asked the panel if any of them were insured with Travelers Insurance Company. Then is his opening argument, plaintiff's counsel said: ". . . we will show that the defendant at that time made a statement to the lady, and insisted that she go to the doctor, that he stated that to her, that it was his fault—that his insurance company would take care of it for her. . ." Defendant immediately made a motion for a mistrial. In the colloquy which followed, insurance was mentioned several more times in the jury's hearing. The court denied the motion, warned the parties to watch their words and instructed the jury to disregard any mention of insurance—that it had absolutely nothing to do with the case. The trial then proceeded, but while giving testimony the plaintiff did blurt out the forbidden

word once more. The defendant later admitted fault during his testimony so the court directed a verdict on the issue of liability. The jury retired and assessed damages at $10,000.

Defendant is aggrieved. He seems to think that the mention of insurance fifteen times before the jury had a prejudicial effect which instructions to disregard could not erase. He also notes that the assessment of damages was in the exact amount of minimum liability coverage in Georgia. Plaintiff, of course, relies on opinions of this court, which are with him in each individual instance.

It is perfectly clear that the jury, none of whom are contended to be imbeciles, got the message that the defendant had insurance. It is also likely that it considered this fact when it assessed damages. The question is whether a mistrial would have helped the situation? Would a brand new, intelligent jury, informed on voir dire that Travelers Insurance Company was involved in the case, have disregarded this hint and assessed differently? Common sense suggests not.

In this battle between the plaintiff and the liability insurer, many forget that a defendant could possibly be shot down as the innocent bystander—especially on the question of damages. For example, what if there are two defendants in a case where the jury has been qualified as to a named insurer and one defendant is uninsured. Even worse and more probable would be where the jury has been qualified and the named insurer is defending under a reservation of rights. Another example is that while the jury knows there is insurance it doesn't know the limit of liability.

Is there a better way to handle this problem without holding the law up to ridicule? One suggestion is that jury commissioners elicit this information and that these prospective jurors could be eliminated prior to empanelling. In some degree this could be a burdensome procedure, but with a little ingenuity it could eliminate the need for these questions on voir dire.

An authority on the Georgia law on evidence has suggested "that the better solution would be a change in the substantive law that would permit a plaintiff to join the liability insurance carrier as a party defendant." Agnor, 11 Encyclopedia of

Georgia Law 302, § 46, "Evidence." The states of "Louisiana and Wisconsin have statutes expressly permitting the joinder of the insurer. Both statutes provide that the liability of the insurer is subject to the terms of the policy and that the insurer is not deprived of any defense it would have upon the contract of insurance as against the insured." 4 ALR2d 761, 767.

As Professor Wigmore says in his treatise: ". . . the general prevalence of liability insurance for auto injuries is known to the jurors; hence, for the law to forbid any disclosure of it in the course of the trial seems to be merely a piece of hypocritical futility. . . [It] leads to constant evasion and quibbling, and thus to new trials for technical errors; so that it is doubtful whether in the long run there has been any gain to justice by the prohibition. . . [T]he general possession of automobiles by jurors may be expected, under suitable argument and direction, to educate them to realize that reckless verdicts for excessive amounts or in unmerited cases will merely lead to increase of local insurance rates, thus reacting upon their own exchequer." 2 Wigmore, Evidence, § 282a, p. 146.

The tragedy here is that probably the only remedy to stop this judicially created charade lies in the hands of another branch of government—the General Assembly of Georgia.