A96A2145. SMITH v. CRUMP.
(476 SE2d 817)

ELDRIDGE, Judge.

Joyce Crump, appellee, sued James Smith, Jr., appellant, in the State Court of DeKalb County on March 9, 1995, for injuries received in a motor vehicle collision which occurred on November 17, 1994. Appellant was timely served on March 16, 1995, and answered on April 14, 1995, demanding a jury trial.

The case came up on the jury calendar on February 9, 1996. Appellant filed a timely motion in limine, seeking to exclude the qualification of the jury with appellant's insurance carrier. The case was called for trial on February 20, 1996, when the motion in limine was heard and denied.

The jury returned a verdict for the appellee on February 22, 1996, in the amount of $1,050,597, and judgment was entered on February 28, 1996. A motion for remittitur or, in the alternative, a new trial was filed on March 7, 1996. The motion was heard and denied on May 6, 1996. Notice of appeal was filed on June 4, 1996.

At trial, the evidence showed that appellee received significant soft tissue and neurological injuries to her spine, and following spinal surgery to remove discs and fuse her cervical spine, her medical expenses totaled $36,148.91. Appellee's complaints involved severe headaches, neck pain, radicular pain from the neck down the arm, low back pain, left knee injury, right ankle injury, inability to sleep, depression, and associated short temper. Dr. Saba, appellee's neurologist, found right ankle swelling, weakness in the left knee, decreased sensation at the right C-7 vertebra, 30 percent reduction in range of motion in the neck and low back, and muscle spasms in the neck and low back. Dr. Saba's diagnosis as of January 10, 1995, consisted of post concussion syndrome, depression, headaches, strained knee and ankle, and severe injury to the low back and neck, indicating multiple disc herniations. After an M.R.I. had been performed, Dr. Saba diagnosed a displaced L5-S1 disc, a disc problem at C3-4, and herniated discs at C4-5, C5-6, and C6-7. Dr. Goodman, appellee's neurosurgeon, saw her on June 20, 1995, and performed a myelogram on her on June 28, 1995, which confirmed that she had large disc herniations at C4-5 and C6-7, with likely herniation at C5-6. On August 28, 1995, Dr. Goodman performed a cervical spinal fusion after surgically removing the affected discs. As late as November 1995, Dr. Goodman found postoperative muscle spasms and pain, which prevented appellee from being able to work. Dr. Saba, on October 31, 1995, found that appellee had headaches and chronic sleep problems. Prior to surgery, appellee's disability rating to the body as a whole had been at 19 percent; after surgery the rating was reduced to 17 percent.

Appellee had limited education and job skills, having previously worked in the hotel/motel industry as a housekeeper, earning $4.25 per hour. She was totally disabled from returning to this or any other physical work by her injuries. She was 38 years of age at trial and her injuries were permanent, with future pain and suffering expected.

1. Appellant's first enumeration of error contends that the trial court erred by allowing the jury to be qualified as to appellant's

insurance liability carrier, causing prejudice to appellant.

The first qualification of a jury as to insurance occurred in *City of Sandersville v. Moye*, 25 Ga. App. 64 (4), 65-66 (102 SE 552) (1920).

In *Bibb Mfg. Co. v. Williams*, 36 Ga. App. 605 (1), 607 (137 SE 636) (1927), counsel for the insured argued that the qualification of the jury as to insurance would have a prejudicial effect on the insured. This Court then held: "where it appears that the defendant is in fact insured against liability, the employees, stockholders, and relatives of stockholders of the insurance carrier are disqualified to serve as jurors in the case; and in such case it is not error for the court, at the request of the plaintiff and over the objection of the defendant, to purge the jury by inquiring whether any juror is an employee or stockholder of, or related to a stockholder of, the insurance company." Id.

The Supreme Court held that it was reversible error not to voir dire and to remove all jurors who were employees or stockholders, or related by blood or by marriage to a stockholder or employee, of an insurance company interested in the case. In *Atlanta Coach Co. v. Cobb*, 178 Ga. 544, 549 (174 SE 131) (1934), the court held: "We may concede that the mention of an indemnity contract in the argument or any other impertinent reference thereto would be objectionable; but there is a vast difference between instances of this character and a bona fide effort to preserve the right of trial by an impartial jury." See *Tatum v. Croswell*, 178 Ga. 679 (174 SE 140) (1934); *Coleman v. Newsome*, 179 Ga. 47 (174 SE 923) (1934); *Rogers v. McKinley*, 52 Ga. App. 161 (30), 164 (182 SE 805) (1935); OCGA § 15-12-135.

This Court, not unmindful of the incidental effect of qualifying the jury as to the insurance carrier, has consistently held that it would be reversible error not to do so, because, presumptively, such failure would be harmful to the plaintiff in obtaining a fair and impartial jury. In *Shepherd Constr. Co. v. Vaughn*, 88 Ga. App. 285, 288 (76 SE2d 647) (1953), this Court held that "[u]nder the circumstances of this case, there was a strong probability that the insurance company was to some extent interested in the outcome of the case, and this was sufficient to authorize the trial judge to qualify the jury panel with respect to their interest in the insurance company." See *Stevens v. Wright Contracting Co.*, 92 Ga. App. 373, 378-380 (88 SE2d 511) (1955); *United Security Agency v. Sims*, 161 Ga. App. 167 (288 SE2d 117) (1982).

In *Weatherbee v. Hutcheson*, 114 Ga. App. 761 (1) (a) (152 SE2d 715) (1966), this Court found that in the case of mutual insurance companies, the policyholder had a direct pecuniary interest in the outcome of litigation involving one of its policies. The Court held: "If the company is a mutual company, in the assets of which the policyholders have an interest, they are disqualified; aliter if the company

is a stock company." Accord *Bailey v. Todd*, 126 Ga. App. 731 (15), 741 (191 SE2d 547) (1972); *Thompson v. Sawnee Elec. &c. Corp.*, 157 Ga. App. 561 (2), 562-563 (278 SE2d 143) (1981); *Crosby v. Spencer*, 207 Ga. App. 487 (6), 490 (428 SE2d 607) (1993).

Only after *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991) (overruled by *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992)) have counsel for insureds sought to raise an issue of qualifying the jury as to the insurers. Absent relevance and materiality, the mention of insurance has been deemed harmful. However, not all mention of insurance in the presence of the jury is deemed harmful; since the 1930's, direct action against insurers has been permitted when the tortfeasor is an intrastate common or contract carrier, and the policy of insurance must be put into evidence to prove coverage with the deletion of the amount of coverage. OCGA § 46-7-12; *St. Paul Fire &c. Co. v. Fleet Transport Co.*, 116 Ga. App. 606 (158 SE2d 476) (1967); *Carolina Cas. Ins. Co. v. Davalos*, 246 Ga. 746 (272 SE2d 702) (1980). Since 1963, with the passage of the Georgia Uninsured Motorist Act, Ga. L. 1963, p. 588, OCGA § 33-7-11 (d), the insurer has had the option of answering in its own name or in the name of the uninsured motorist; for legal reasons, insurers have preferred to defend in their own names. See *State Farm Mut. Auto. Ins. Co. v. Horace Mann Mut. Ins. Co.*, 125 Ga. App. 411 (188 SE2d 171) (1972); *Home Indem. Co. v. Thomas*, 122 Ga. App. 641 (178 SE2d 297) (1970); *State Farm Mut. Auto. Ins. Co. v. Jiles*, 115 Ga. App. 193 (154 SE2d 286) (1967). Mandatory motor vehicle liability insurance, either as no fault or under OCGA § 33-34-5, has been in effect in Georgia since 1974. Ga. L. 1974, p. 113. Therefore, to apply the quote from the late Judge Hall's concurrence in *Young v. Carter*, 121 Ga. App. 191, 193 (173 SE2d 259) (1970), "Any juror who doesn't know that there is liability insurance in the case [of a motor vehicle collision] by this time should probably be excused by virtue of the fact that he or she is an idiot." Since 1921, when the first jury was qualified as to insurance coverage and the various other situations when insurance is properly before the jury, there has been no systemwide failure of justice caused by the knowledge of the existence of insurance. Since *Denton*, this Court has held in both *Crosby v. Spencer*, supra, and *Franklin v. Tackett*, 209 Ga. App. 448 (2), 450 (433 SE2d 710) (1993), that *Denton* had no legal effect on the necessity for the trial court to qualify the jury as to the insurance carrier.

Chief Judge Beasley made a well-reasoned special concurrence in *Franklin v. Tackett*, supra. It is highly seductive in its logic: "Without the link of knowledge, there is no disqualifying interest, because the interest will not affect the decision-making." Id. at 453. Ignorance is purifying of interest; so long as the juror remains in ignorance and never suspects that there is an interest, what harm can there be.

However, what if they were not truthful in their voir dire to disclose employment or stock ownership on purpose; what if during the trial they suddenly become aware of their interest; or what if, more insidious, someone reveals the common interest between the juror and the party on trial by a company logo on a lapel pin, stationery, file folder or anything that would make the association in the juror's mind? The issue is not whether or not the juror can be fair and impartial while having the interest; if this were the issue, then ignorance would prevent prejudice. The issue is the per se disqualification under OCGA § 15-12-135, as a matter of law, with the presumption of prejudice. See *Patterson v. Lauderback*, 211 Ga. App. 891 (2), 895 (440 SE2d 673) (1994) (overruled on other grounds). The Supreme Court in *Melson v. Dickson*, 63 Ga. 682, 686 (1) (36 AR 128) (1879) held: "A big part of the battle is the selection of the jury, and an impartial jury is the corner-stone of the fairness of trial by jury." It becomes as important that there be a public perception of fairness and impartiality of a jury as the actual impartiality of the jury; otherwise, confidence in trial by jury is eroded. This Court and the Supreme Court balanced the effect of harm to the insured by qualifying the jury as to the insurer against the constitutional, fundamental right to a trial by an impartial jury and determined, as a matter of public policy, that the harm, if any, to the insured was vastly outweighed by the fundamental right to an impartial jury. The Supreme Court held in *Atlanta Coach Co. v. Cobb*, supra at 549, that "a bona fide effort to preserve the right of trial by an impartial jury" mandates such qualification, notwithstanding any resulting harm.

This Court is bound by such precedent to hold that the trial court did not err in having the jury qualified as to the insurer. See *Strickland v. Stubbs*, 218 Ga. App. 279 (1) (459 SE2d 473) (1995); *Byrd v. Daus*, 218 Ga. App. 145 (1), 146 (460 SE2d 819) (1995); *Gonzalez v. Wells*, 213 Ga. App. 494 (1), 495 (445 SE2d 332) (1994); *Patterson v. Lauderback*, supra at 895-896.

2. The second enumeration of error is that the trial court erred in denying the motion for remittitur or, in the alternative, a motion for new trial, on the grounds that the verdict was excessive and that it manifestly appears from the record that the verdict was the result of prejudice, bias, corruption, or gross mistake.

OCGA § 51-12-12 does not empower the trial judge to reduce an award, but empowers the trial judge to seek the parties to accept an additur or remittitur upon the threat of a new trial and allows the judge to order a new trial on the issue of damages only; refusal by either party to accept leaves the judge with the power only to grant or to deny a new trial and to decide what issues will be retried. See *Spence v. Hilliard*, 260 Ga. 107 (389 SE2d 753) (1990); *Jacobsen v. Haldi*, 210 Ga. App. 817 (437 SE2d 819) (1993). Therefore, the crite-

ria under either a motion for remittitur or new trial rests upon the sound exercise of discretion in granting or denying either or both such motions, as the case law applicable to the denial of a new trial would govern both motions.

The motion alleges "[t]hat the verdict was based on passion, undue bias, gross mistake, or prejudice." However, the trial transcript reveals no improper arguments, inflammatory testimony, prejudicial evidence with no probative value, or appeals to prejudice such as to excite "passion, undue bias, gross mistake or prejudice."

The evidence at trial showed a plaintiff who received serious permanent injuries to her cervical spine, requiring surgery to remove multiple discs and to accomplish the fusion of her neck. Appellee is a woman of limited education and job skills; thus the permanent physical impairment on her ability to lift, bend, twist, stoop and perform other physical activities has permanently precluded her from securing any job that she was previously capable of handling; and has also limited her other life activities. At 38 years of age, appellee has a long life of foreseeable medical problems related to her injuries, as well as mental pain and suffering. The chronic depression and sleep problems are part of the pain and suffering.

Under Georgia law, pain and suffering in the past, present, and future are measured by the enlightened conscience of a fair and impartial jury. There exists no rule or yardstick against which damages for pain and suffering are to be measured, as suggested by the appellant, who would have such damages as some multiple of special damages for medical expenses and lost wages. The reason is simple; if such an objective yardstick is applied, then the young, the old, the sick, the disabled, the rich, the poor, the unemployed, and the underemployed would be treated differently than the fully employed when having such special damage cap would apply. See *Atlanta &c. R. Co. v. Wood*, 48 Ga. 565 (1873); *Southern Cotton Oil Co. v. Skipper*, 125 Ga. 368 (54 SE 110) (1906); *Sam Finley, Inc. v. Russell*, 75 Ga. App. 112 (42 SE2d 452) (1947); *Atlanta &c. R. Co. v. Gilbert*, 82 Ga. App. 244 (60 SE2d 787) (1950).

" 'Before the verdict will be set aside on the ground that it is excessive, where there is no direct proof of prejudice or bias, the amount thereof, when considered in connection with all the facts, must shock the moral sense, appear "exhorbitant," "flagrantly outrageous" and "extravagant." "It must be monstrous indeed and such as all mankind must be ready to exclaim against at first blush." It must carry its death warrant upon its face.' " *Seaboard System R. v. Taylor*, 176 Ga. App. 847, 849 (2) (338 SE2d 23) (1985); *CSX Transp. v. Darling*, 189 Ga. App. 719 (1), 721 (377 SE2d 217) (1988); *Realty Bond &c. Co. v. Harley*, 19 Ga. App. 186 (2), 187-188 (91 SE 254) (1916); *Candler v. Smith*, 50 Ga. App. 667, 677 (9) (179 SE 395) (1935);

accord *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331 (7), 341 (319 SE2d 470) (1984).

In *Atlantic Greyhound Corp. v. Austin*, 72 Ga. App. 289, 292 (33 SE2d 718) (1945), this Court held: "This court does not have as broad discretionary powers as are conferred on trial judges in setting aside verdicts as excessive. When a case comes before this court, after the refusal of a new trial by the presiding judge, it comes not only with the presumption in favor of the verdict, but also stamped with the approval of the judge who tried the case, and where no prejudice or bias or corrupt means in reaching the verdict appear, we are not authorized to set it aside as being excessive." See *Reliance Ins. Co. v. Bridges*, 168 Ga. App. 874 (16), 890 (311 SE2d 193) (1983); *St. Paul Fire &c. Ins. Co. v. Dillingham*, 112 Ga. App. 422, 425 (145 SE2d 624) (1965); *Shepherd Constr. Co. v. Vaughn*, 88 Ga. App. 285 (8), 294 (76 SE2d 647) (1953); *Brown v. Service Coach Lines*, 71 Ga. App. 437 (31 SE2d 236) (1944).

The verdict was within the evidence; appellant concedes in his brief that, with the maximum loss of future earnings and all other special damages, such sum would come to $409,119.31. This would leave approximately $600,000 in damages for a lifetime of pain and suffering with a permanent physical disability, chronic depression, headaches, and sleep problems. The jury, in their enlightened conscience, gave a verdict which the trial court declined to disturb; nor will this Court find error.

*Judgment affirmed. McMurray, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 2, 1996 — ▇▇▇▇▇▇▇▇▇▇

*Johnson, Dangle & Parmer, Robert F. Dangle, Barton R. Bright III*, for appellant.

*Smith, Gambrell & Russell, Matthew S. Coles, Swift, Currie, McGhee & Hiers, Jonathan M. Engram, Gambrell & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom, Linda A. Klein, Stephen M. Ozcomert*, for appellee.