## A01A0352. ARA HEALTH SERVICES et al. v. STITT.
(551 SE2d 793)

POPE, Presiding Judge.

Former inmate Stephanie Stitt brought this medical malpractice action against 13 defendants, including the Department of Corrections of the State of Georgia; ARA Health Services, Inc. d/b/a Correctional Medical Services and Correctional Medical Services, Inc. ("CMS"),[1] and Dr. A. G. Enaw. She alleged that CMS had a contract with the Department of Corrections to provide certain medical treatment and care for inmates while incarcerated at various institutions, including Baldwin and Washington Correctional Institutions. Stitt claimed that as a result of the wrongful medical treatment she received while she was incarcerated at Baldwin Correctional Institute and at Washington Correctional Institute, she suffered permanent and severe injuries. Specifically, she claimed that she fell while she was a prisoner, and that because of defendants' negligent treatment of her, she suffered nerve damage which has caused her permanent bladder and bowel damage. In addition to claims of professional negligence, Stitt claimed that the defendants had acted recklessly and that she was entitled to punitive damages.

At trial Stitt introduced the following evidence: she had a fall while incarcerated on April 5, 1994, after which her legs burned and she requested medical attention. Stitt continued to report pain and continued to seek medical attention for the pain and was admitted to the infirmary on June 6, 1994, when she reported that her hip and her private parts were numb.

On June 14, 1994, Stitt was experiencing loss of control over her bladder. She reported numbness, loss of bladder control, and the start of loss of bowel control to the medical personnel at the institution. There was expert medical testimony that Stitt's symptoms should have indicated that immediate corrective action was necessary. This medical testimony showed that Stitt suffered from cauda equina syndrome, which if not treated, can lead to irreversible nerve damage in the bladder and bowel regions.

There was evidence that Dr. Enaw examined Stitt, that she urinated on his examining table, and that he did not require an immediate diagnostic test, nor did he promptly treat her. There was evidence that Dr. Enaw examined Stitt repeatedly during June 1994, but did not perform the necessary neurological exams to detect her condition. Stitt also continued having problems with bowel incontinence, but this problem was not treated properly. There was testimony that

---

[1] Correctional Medical Services, Inc. and Correctional Medical Services are two separate corporate entities. Because for purposes of this appeal any differences between the companies are irrelevant, we will treat them as one, using the name "CMS."

Stitt wrote frequent letters to the prison officials begging for medical help. There was medical evidence that the necessary tests were not administered to Stitt until August 10, 1994, by which time her condition had deteriorated and she had suffered permanent damage.

There was medical testimony that defendants violated the standard of care in repeatedly failing to perform the necessary exams to diagnose or treat Stitt. This testimony showed that Stitt suffered permanent nerve damage because of defendants' failure to promptly and properly treat her. At trial Stitt testified that presently she must catheterize her bladder at least four times per day and wear adult diapers due to the loss of bowel control.

Before trial Stitt settled with the Department of Corrections for $280,000. In January 1999, the case went to trial. The defendants at trial were CMS, Linda Blizzard, who was the medical administrator at Baldwin Correctional Institute, and Dr. Enaw. The testimony regarding Stitt's injuries was extensive and conflicting, including testimony from several medical experts. The trial lasted for more than two weeks, during which time the jury heard testimony from more than twenty-five witnesses. The jury did not hear the evidence regarding the settlement. At the conclusion of the trial, the jury was instructed that if it found the defendants liable, it should allow Stitt to recover the total amount that would compensate her for her injuries.

After trial, the jury returned a verdict of $600,000 against CMS, but in favor of the other two defendants. The jury did not award any punitive damages. In entering judgment, the trial court reduced the $600,000 award by the amount of the previous $280,000 settlement. Citing *Allison v. Patel*, 211 Ga. App. 376 (438 SE2d 920) (1993), the court changed the verdict amount to $320,000, and entered judgment for that amount along with interest from the date of judgment. The court then entered judgment in favor of defendants Blizzard and Enaw.

Stitt filed a motion for new trial, or in the alternative for additur, under OCGA § 51-12-12 (b), arguing that the judgment was inadequate. In an order entered on June 5, 2000,[2] the court conditionally granted Stitt's motion on both Stitt's compensatory and punitive damages claims. In its order, the court stated that it was increasing the judgment to $600,000, but that *if* the corporate defendants (CMS) "filed a statement with the Court within 30 days of the order stating that they rejected the court's additur, the Plaintiff's motion for new trial would be granted against these defendants." If CMS did not file

---

[2] Although the court initially entered an order dated May 30, 2000, it reentered the order on June 5, 2000, and the time difference is not dispositive of this appeal.

an objection, the court's order stated, the additur, increasing the amount of the judgment to $600,000, would stand. In explaining its decision to increase the amount of the verdict, the court stated: "the treatment Stitt received from [CMS] was egregious and that treatment directly and proximately caused serious permanent injuries to the plaintiff." Furthermore, the court stated that based on the evidence at trial, "any amount less than $600,000.00 would be clearly inadequate in light of the overwhelming evidence of the serious, permanent and debilitating injuries defendants caused the plaintiff to suffer."

With respect to defendant Enaw, the court stated that it had carefully reviewed the evidence and was "unable to discern a rational basis on which the jury could have returned a verdict" in his favor. Accordingly, the court granted a new trial as to the doctor because it found that the verdict was contrary to "the great weight of the evidence of his liability." The court also stated that interest on the original judgment would run until the date of the order, and that thereafter the interest would run on the modified judgment.

From that order CMS and Enaw appealed to this court on June 23, 2000. The appeal was dismissed on July 25, 2000. On August 28, 2000, for the first time, CMS filed an objection to the additur award. On August 30, 2000, the trial court entered an order concluding that because CMS had not filed a timely objection rejecting the additur, the increased judgment prescribed earlier would stand. CMS and Enaw again appeal.

1. CMS first argues that the trial court erred in awarding additur because it filed a timely objection rejecting the increased award. To reiterate the facts regarding the timing of CMS' objection: the trial court's order increasing the amount of the judgment was entered on June 5, 2000. The order stated that either party should file its objection to the additur within 30 days. Instead of filing an objection, CMS filed its notice of appeal to this court on June 23, 2000. CMS did not file an objection to the award until August 28, 2000.

CMS argues that the notice of appeal had a supersedeas effect and that the trial court could take no action on the case before the remittitur was returned. Under this argument, CMS contends that once the remittitur was returned to the trial court on August 14, 2000, it had 12 days remaining within which to file its objection. Under this construction, the objection CMS filed on Monday, August 28, 2000, was timely.

In response, Stitt argues that CMS waived the right to complain about the additur when it failed to reject the award in a timely fashion. Stitt contends that despite the filing of the notice of appeal, CMS should have filed its rejection of the additur within 30 days of June 5,

2000. Stitt contends that CMS should not be allowed to unilaterally expand the time in which it is allowed to reject an additur.

We agree with Stitt that CMS did not file a timely objection to the additur. OCGA § 5-6-46 (a) provides: "In civil cases, the notice of appeal filed as provided in Code Sections 5-6-37 and 5-6-38 shall serve as supersedeas upon payment of all costs in the trial court by the appellant and it shall not be necessary that a supersedeas bond be filed. . . ." See also Court of Appeals Rule 40 (a). Nevertheless, the filing of a notice of appeal in a civil action does not serve as a supersedeas until all costs in the trial court have been paid. When all costs are paid, the trial court loses jurisdiction over the case while the appeal is pending. *Rockdale Awning &c. Co. v. Kerbow*, 210 Ga. App. 119, 120 (1) (435 SE2d 619) (1993); *Duncan v. Ball*, 172 Ga. App. 750, 751-752 (1) (324 SE2d 477) (1984).

In this case, the record shows that the costs were paid in the trial court on Friday, July 7, 2000, and that was the date on which this court acquired jurisdiction over the case. This date was more than 30 days after the trial court's June 5 order. Accordingly, the period within which CMS should have filed its objection to the additur expired before this court acquired jurisdiction; thus, CMS failed to file a timely objection. *Leventhal v. Seiter*, 208 Ga. App. 158, 165-166 (11) (430 SE2d 378) (1993); see also *Nest Investments v. Tzavaras*, 221 Ga. App. 282 (471 SE2d 223) (1996). Without an objection, the trial court's order of June 5, 2000, increasing the amount of the judgment to $600,000 became the judgment as to CMS. In this respect, the court's order of August 30, 2000, entering final judgment as to CMS was proper.[3]

CMS relies on *MTW Investment Co. v. Alcovy Properties*, 223 Ga. App. 230 (477 SE2d 395) (1996), and *Williams v. Natalie Townhouses &c.*, 182 Ga. App. 815 (1) (357 SE2d 156) (1987), to support its argument here. Those cases do not alter our analysis. In *Williams*, the costs of the case had been paid and the *Williams* court explicitly stated: "[t]he payment of costs and filing of a notice of appeal are sufficient to confer upon this court the jurisdiction. . . ." Id. at 817 (1). There is no discussion in *MTW Investment Co.* regarding the payment of costs, because the court concluded that the trial court had been divested of jurisdiction during the pendency of the appeal. Thus, it appears that the costs had been paid.

2. CMS argues that even if there was no timely objection, the trial court abused its discretion in awarding the conditional additur. CMS argues that Stitt did not introduce evidence of special damages,

---

[3] We note that the entry of this order helps prevent confusion regarding the date and finality of orders in these situations. See generally *Three Crowns Antiques v. Jerrell*, 244 Ga. App. 456, 459 (535 SE2d 827) (2000).

and that the entire award was for pain and suffering. CMS argues that certain expert testimony casts doubt on the issues of causation and damages and that there was expert testimony which contradicted Stitt's claims of bowel and bladder dysfunction.

Citing *Jacobsen v. Haldi*, 210 Ga. App. 817 (437 SE2d 819) (1993), and *Spence v. Hilliard*, 260 Ga. 107 (389 SE2d 753) (1990), Stitt argues that by failing to timely object, CMS waived its arguments here. She also contends that the court's conditional award was substantively appropriate.

We first note that the question presented here is not one of set-off and the parties do not directly address this issue. With respect to set-off, the trial court appropriately exercised the option not to reveal the settlement and then to reduce the verdict before judgment by the amount of settlement. See generally *Ga. Dept. of Transp. v. Cannady*, 230 Ga. App. 585, 590-591 (3) (497 SE2d 72) (1998); *Brown v. Southern Aggregates Co.*, 207 Ga. App. 886 (1) (429 SE2d 294) (1993). The court then *conditionally increased* the amount of the verdict under OCGA § 51-12-12 (b) — in raising the amount of the verdict, the court did not ignore the provisions for set-off; it simply added on to the reduced verdict. Thus, the parties appropriately address only the additur issue because the court complied with the set-off provisions, but then increased the amount of the verdict subject to CMS' objection.

Although we do not agree with Stitt that CMS waived its right to object to the judgment in this appeal by its failure to file a timely objection below, we note that by failing to object to the increased award CMS must now have that award reviewed under the appellate standard of review employed for motions for new trials. See, e.g., *Moody v. Dykes*, 269 Ga. 217, 221 (6) (496 SE2d 907) (1998). And, "[t]he trial court's decision on a motion for a new trial will be upheld on appeal unless it was an abuse of discretion." *Lisle v. Willis*, 265 Ga. 861, 864 (3) (463 SE2d 108) (1995).

OCGA § 51-12-12 (a) states: "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case."

OCGA § 51-12-12 (b) further provides:

If the jury's award of damages is clearly so inadequate or so excessive as to any party as to be inconsistent with the preponderance of the evidence, the trial court may order a new trial as to damages only, as to any or all parties, or may condition the grant of such a new trial upon any party's refusal to accept an amount determined by the trial court.

In *Moody v. Dykes*, our Supreme Court clarified the provisions of OCGA § 51-12-12 (b), stating:

> an excessive or inadequate verdict is a mistake of fact rather than of law and addresses itself to the discretion of the trial judge who, like the jury, saw the witnesses and heard the testimony. In fact, the trial court's approval of the verdict creates a presumption of correctness which is not to be disturbed absent compelling evidence. . . . Of course, the appellate court may set aside a jury verdict under OCGA § 51-12-12 (a), but the threshold is extremely high. Our role is not to enter the jury box.

(Citations and punctuation omitted.) 269 Ga. at 221-222 (6).

And in *Smith v. Crump*, 223 Ga. App. 52, 56-57 (2) (476 SE2d 817) (1996), this court further analyzed the trial judge's role in implementing OCGA § 51-12-12, stating:

> OCGA § 51-12-12 does not empower the trial judge to [increase] an award, but empowers the trial judge to seek the parties to accept an additur or remittitur upon the threat of a new trial and allows the judge to order a new trial on the issue of damages only; refusal by either party to accept leaves the judge with the power only to grant or to deny a new trial and to decide what issues will be retried. [Cits.] Therefore, the criteria under either a motion for [additur] or new trial rest[ ] upon the sound exercise of discretion in granting or denying either or both such motions, as the case law applicable to the denial of a new trial would govern both motions.

Id.

In this case, the trial court made the factual determination that the overwhelming evidence established that the reduced award of $320,000 was so inadequate as to be inconsistent with the preponderance of the evidence. The court noted that the defendants' treatment of Stitt was "egregious" and had resulted in her serious, permanent, and debilitating injuries.

After reviewing the record, we conclude that the trial court did not abuse its discretion in conditioning the grant of Stitt's motion for new trial upon the defendants' objection to the increased award. And, in the absence of an objection by CMS, the court's entry of the increased award was not an abuse of discretion. *Jacobsen v. Haldi*, 210 Ga. App. at 818. In reaching this decision, we are mindful that the trial court's determination that the damages were "clearly so inadequate or so excessive as to any party as to be inconsistent with

the preponderance of the evidence" is a factual one, and that our review of that factual determination is whether the court abused its discretion. See *Smith v. Crump*, 223 Ga. App. at 57. We further emphasize that *had CMS filed a timely objection*, the case would have proceeded with the court's grant of a new trial and the increased award would have been rejected.

3. The judgment against CMS was entered in this case on August 30, 2000. It awarded interest on the original judgment of $320,000, from the original date of judgment, February 19, 1999, until August 30. Citing *Three Crowns Antiques v. Jerrell*, 244 Ga. App. 456 (535 SE2d 827) (2000), CMS argues that this interest award was erroneous because as of the court's conditional grant of a new trial, there was no "judgment" on which interest could accrue.

This argument lacks merit. Although there was no "judgment" for purposes of appeal under *Three Crowns* when the trial court's conditional grant of a new trial was issued, there was an existing judgment for purposes of interest at the time the court entered the conditional grant of the new trial. The $320,000 remained the judgment of the court for purposes of interest accrual until the higher judgment was entered, and we find no error.

4. Finally, CMS and Dr. Enaw argue that the trial court abused its discretion in granting a motion for new trial as to Enaw.

The appeal in this case is from the August 30, 2000 final order of the trial court in which it entered judgment against CMS. That order simply references the June 5 order in which the court granted Stitt's motion for new trial against Dr. Enaw. The trial court then stated that judgment was entered against CMS in the amount of $600,000. The court certified the judgment as to CMS as a final order under OCGA § 9-11-54 (b). "This court has previously held that the grant of a motion for new trial is not a final judgment within the meaning of OCGA § 5-6-34 (a) (1), and that, therefore, an application for interlocutory review is required to be filed in order to give this court jurisdiction to entertain an appeal under these circumstances. [Cit.]" *Rockdale Awning v. Kerbow*, 210 Ga. App. at 121 (2). Because the case against Enaw was still pending, he may not here appeal the nonfinal grant of the motion for new trial. See generally *Lawson v. Athens Auto Supply &c.*, 200 Ga. App. 609, 610-611 (1) (409 SE2d 60) (1991).

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED JULY 5, 2001 — 

*William P. Tinkler, Jr., Wayne E. Brooks, Jr., Sheri L. Smith*, for appellants.

*Parks, Chesin, Walbert & Miller, David F. Walbert, William J. Atkins, Charles A. Mathis, Jr.*, for appellee.